# EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

### COVER SHEET

| Plaintiff(s) | CIVIL DIVISION |
|---|---|
| Robert G. Hague and Elizabeth A. Hague, Husband and Wife | **Case Number :** GD - 20 - 1900 |
| | **Type of pleading :** COMPLAINT IN CIVIL ACTION |
| | **Code and Classification :** _____ |
| | **Filed on behalf of** Plaintiff, SNUG & MONK PROPERTIES, INC., a Pennsylvania Corporation, |
| | (Name of the filing party) |
| **Vs** | ☑ Counsel of Record |
| Defendant(s) | ☐ Individual, If Pro Se |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | **Name, Address and Telephone Number :** Lawrence P. Lutz, Esquire Brian D. Farrington, Esquire LUTZ PAWK & BLACK 101 East Diamond St., Ste. 102 Butler, PA 16001 724-285-3400 |
| | **Attorney's State ID :** 34606 (Lutz) 325641 (Farrington) |
| | **Attorney's Firm ID :** _____ |

GD-20

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ROBERT G. HAGUE and ELIZABETH A.
HAGUE, Husband and Wife,

         Plaintiffs,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

         Defendant.

CIVIL ACTION

No. _____

## NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the Complaint and this notice are served, by entering written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO A LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Lawyer Referral Service
Allegheny County Bar Association
920 City-County Building
414 Grant Street
Pittsburgh PA  15219
(412) 261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ROBERT G. HAGUE and ELIZABETH A.
HAGUE, Husband and Wife,

          Plaintiffs,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

          Defendant.

CIVIL ACTION

No. _____

## COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiffs, Robert G. Hague and Elizabeth A. Hague, husband and wife, by and through their attorneys, LUTZ, PAWK, & BLACK, LAWRENCE P. LUTZ, ESQUIRE, and BRIAN D. FARRINGTON, ESQUIRE, and files the foregoing Complaint in Civil Action, and in support thereof, avers as follows:

## PARTIES, JURISDICTION, & VENUE

1.     The Plaintiffs, Robert G. Hague and Elizabeth A. Hague, husband and wife, (collectively "Plaintiffs"), are adult individuals with an address of 202 West Drive, Pittsburgh, PA 15215.

2.     Defendant, First American Title Insurance Company (hereafter "First American") is a foreign corporation authorized to do business in the Commonwealth of Pennsylvania and having its principle place of business at 1 First American Way, Santa Ana, California 92707.

3.     At all pertinent times hereto, First American availed itself of the privileges of doing business in the Commonwealth of Pennsylvania and the County of Allegheny.

4.     First American, as part of its principle line of business, regularly issues title insurance policies for properties located in the Commonwealth of Pennsylvania and the County of Allegheny.

5.     The facts forming the basis of this matter took place in Allegheny County, pertaining to the sale and insuring of real property in Fox Chapel Borough.

6.     Therefore, jurisdiction and venue are appropriately vested with the Court of Common Pleas of Allegheny County.

## FACTS

7.     In November of 2013, Plaintiffs began the process of purchasing the property located at 202 West Drive, Fox Chapel Borough, Allegheny County, Pennsylvania, 15215 (hereafter the "Property").

8.     In order to secure their investment and protect against adverse claims, encumbrances, and defects in the title to the Property, Plaintiffs retained the services of First American to perform a title search and issue a title insurance policy.

9.     On or about November 15, 2013, Plaintiffs purchased the Property at a closing.

10.    On or about November 25, 2013, First American issued Plaintiffs Title Insurance Policy No. 5020542-18113 (hereafter the "Policy") for the Property. A copy of this Title Insurance Policy is attached hereto, made a part hereof, and marked as Exhibit "A."

11.    Therein, the Policy required First American to insure Plaintiffs against any loss or damage sustained or incurred by them as a result of any defect, lien, or encumbrances on the title, unmarketable title, and by reason of no right of access to and from the Property. *See* Exhibit "A."

12.     Furthermore, the Policy provides coverage in the event that "[s]omeone else has a right to limit Your use of the Land" or that "You are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the land..." *See* Exhibit "A."

13.     In reliance upon the assurances within the Policy, Plaintiff purchased the Property from seller, Marilyn J. Evert, on November 25, 2013, for Two Hundred and Ten Thousand Dollars ($210,000.00).

14.     However, at the time Plaintiffs took ownership of the Property, a lawsuit had been filed against Marilyn J. Evert at GD 13-20805 in the Allegheny County Court of Common Pleas (hereafter the "2013 Lawsuit"). A true and correct copy of the Complaint therein is attached hereto, made a part hereof, and marked as Exhibit "B."

15.     The Plaintiffs had purchased, but had yet to take possession of the Property at the time that service over Ms. Evert was achieved.

16.     The Plaintiffs were advised about the 2013 Lawsuit two days prior to closing on the Property, but relied upon the knowledge, expertise, and skill of First American in ensuring that no lien, encumbrance, or action threatened the Plaintiffs' interest in the Property.

17.     This lawsuit was not excluded by the Policy.

18.     In the 2013 Lawsuit, it was averred that Marilyn J. Evert breached a contract providing for the maintenance of West Drive, a private road.

19.     The 2013 Lawsuit threatens to impose obligations, liens, encumbrances, and other damages upon the owner of the Property, and the Property itself.

20.     As such, the Property was unmarketable at the time Plaintiffs acquired it in 2013, and remains unmarketable, hampering the Plaintiffs' ability to freely transfer and sell the property to any other individual.

21.    As the West Drive maintenance agreement runs with the land, any adverse outcome in the 2013 Lawsuit threatens to impose a lien or other encumbrance upon title to the Property.

22.    The Plaintiffs have contacted First American to make a claim under the Policy.

23.    First American has denied to extend coverage under the Policy.

## COUNT I – BREACH OF CONTRACT

24.    Paragraphs 1 through 23 are incorporated herein by reference.

25.    The Plaintiffs have performed all duties under the Policy, specifically notifying First American of their claim and paying any premium due at the time of policy issuance.

26.    First American has failed to perform its duties under the Policy.

27.    Under the Policy, First American was to insure against the unmarketability of the Property, claims adverse to the title of the Property, and claims affecting the right of access to the Property.

28.    Moreover, First American was to insure against claims which required the Plaintiffs to correct violations of conditions, covenants, and restrictions, as well as claims arising out of another right to limit the use of the land.

29.    At the time of closing the Property had defects which made it unmarketable, specifically, the existence of a civil action.

30.    The 2013 Lawsuit threatened the status of the Property's title, and access thereof.

31.    Furthermore, the 2013 Lawsuit threatened to force Plaintiffs to correct violations of conditions, covenants, and restrictions, and exposed Plaintiffs to the ability of another to limit their use of their property.

32.    First American breached its contractual duties under the Policy to Plaintiffs in the following particulars:

    a. By failing to compensate Plaintiffs for the damages associated with the deficiency and unmarketability of title; and

    b. By failing to defend Plaintiffs against the 2013 Lawsuit.

33.     Plaintiffs would not have proceeded to closing on the Property if they had been aware of the defects and unmarketability of the title.

34.     First American has failed to cure, and refuses to cure, the aforesaid breach despite Plaintiffs' demands.

35.     As a direct result of First American's actions, Plaintiffs have suffered the following damages:

    a. Damages associated with the title to the property being unmarketable;

    b. Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

    c. Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

    d. Any and all losses which may yet be determined.

36.     But for First American's breach of contract, Plaintiffs would not have suffered the aforementioned damages.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

## COUNT TWO - NEGLIGENCE

37.     Paragraphs 1 through 36 are incorporated herein by reference.

38. First American had a duty to conduct a thorough title search in order to ensure Plaintiffs would receive marketable title to the Property, free and clear of any adverse claims which threaten such title.

39. First American breached its duty to Plaintiffs in the following particulars:

    a. By failing to conduct a reasonable and diligent title search on the Property;

    b. By failing to ensure that its agents and employees conducted complete and diligent title searches;

    c. By failing to ensure at closing that title to the Property was free of liens or other encumbrances;

    d. By failing to ensure that no third party had the right to limit or restrict the Plaintiffs' use of the land;

    e. By failing to ensure that no third party had the right or ability, or was seeking the right or ability to correct or remove any violation of a condition, covenant, or restriction running with the land;

    f. By failing to ensure at closing that no action or issue threatened access to and from the property; and

    g. By failing to ensure at closing that title to the Property was marketable.

40. The 2013 Lawsuit would have, and could have, been discovered upon a reasonable and diligent search of public records prior to Plaintiffs' closing on the Property.

41. As a direct and proximate result of First American's negligence, Plaintiff has suffered the following damages:

    a. Damages associated with the title to the property being unmarketable;

    b. Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

    c. Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

    d. Any and all losses which may yet be determined.

42. But for First American's negligence, Plaintiffs would not have suffered the aforementioned damages.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

## COUNT THREE – BREACH OF IMPLIED WARRANTY

43.    Paragraphs 1 through 42 are incorporated herein by reference.

44.    First American held itself out as a qualified expert in its field, experienced in matters involving title and disputes which can affect title.

45.    First American, by issuing a title insurance policy at closing, guaranteed title to the Property was marketable, and that no claims, liens, or other encumbrances of public record threatened the title or marketability thereof.

46.    Plaintiffs reasonably relied upon First American's expertise and assurance that title to the Property was marketable, and that no outstanding claims, liens, or other encumbrances to the Property's title existed in moving forward with the sale.

47.    At the time of closing, title to the Property was not marketable, and the 2013 Lawsuit threatened the status of the Property's title.

48.    First American failed to utilize the reasonable skill and diligence of an experienced title insurance company in similar situations.

49.    As a direct and proximate result of First American's breach, Plaintiffs have suffered the following damages:

        a.    Damages associated with the title to the property being unmarketable;

        b.    Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

      c.  Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

      d.  Any and all losses which may yet be determined.

50.     First American has failed to cure, and refuses to cure, the aforesaid breach despite Plaintiffs' demands.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

Respectfully submitted,

LUTZ, PAWK, & BLACK

Lawrence P. Lutz, Esquire
PA I.D. #34606
Brian D. Farrington, Esquire
PA I.D. #325641
101 East Diamond Street, Suite 102
Butler, PA  16001
(724) 285-3400
Attorneys for Plaintiffs



| *First American Title* | **Homeowner's Policy of Title Insurance**<br>**For a One-To-Four Family Residence** |
|---|---|
| **Eagle Policy** | ISSUED BY<br>**First American Title Insurance Company**<br><br>POLICY NUMBER<br>**5020542-18113** |

## OWNER'S INFORMATION SHEET

Your Title Insurance Policy is a legal contract between You and Us.

It applies only to a one-to-four family residence and only if each insured named in Schedule A is a Natural Person. If the Land described in Schedule A of the Policy is not an improved residential lot on which there is located a one-to-four family residence, or if each insured named in Schedule A is not a Natural Person, contact Us immediately.

The Policy insures You against actual loss resulting from certain Covered Risks. These Covered Risks are listed beginning on page 2 of the Policy. The Policy is limited by:

- Provisions of Schedule A
- Exceptions in Schedule B
- Our Duty To Defend Against Legal Actions On Page 3
- Exclusions on page 4
- Conditions on pages 4, 5 and 6.

You should keep the Policy even if You transfer Your Title to the Land. It may protect against claims made against You by someone else after You transfer Your Title.

**IF YOU WANT TO MAKE A CLAIM, SEE SECTION 3 UNDER CONDITIONS ON PAGE 4.**

The premium for this Policy is paid once. No additional premium is owed for the Policy.

This sheet is not Your insurance Policy. It is only a brief outline of some of the important Policy features. The Policy explains in detail Your rights and obligations and Our rights and obligations. Since the Policy – and not this sheet – is the legal document,

### YOU SHOULD READ THE POLICY VERY CAREFULLY.

If You have any questions about Your Policy, contact:

**FIRST AMERICAN TITLE INSURANCE COMPANY**
**1 First American Way**
**Santa Ana, California 92707**

---

**Homeowner's Policy of Title Insurance for a One-to-Four Family Residence**

### TABLE OF CONTENTS

| | Page | | | Page |
|---|---|---|---|---|
| OWNER'S COVERAGE STATEMENT | 2 | CONDITIONS | | |
| COVERED RISKS | 2 & 3 | 1. Definitions | 4 |
| OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS | 3 | 2. Continuation of Coverage | 4 |
| SCHEDULE A | Insert | 3. How to Make a Claim | 4 & 5 |
|    Policy Number, Premium, Date and Amount | | 4. Our Choices When We Learn of a Claim | 5 |
|    Deductible Amounts and Maximum Dollar Limits of Liability | | 5. Handling a Claim or Legal Action | 5 |
|    Street Address of the Land | | 6. Limitation of Our Liability | 5 & 6 |
|    1. Name of Insured | | 7. Transfer of Your Rights to Us | 6 |
|    2. Interest in Land Covered | | 8. This Policy is the Entire Contract | 6 |
|    3. Description of the Land | | 9. Increased Policy Amount | 6 |
| SCHEDULE B – EXCEPTIONS | Insert | 10. Severability | 6 |
| EXCLUSIONS | 4 | 11. Arbitration | 6 |
| | | 12. Choice of Law | 6 |

---



| First American Title | Homeowner's Policy of Title Insurance For a One-To-Four Family Residence |
|---|---|
| | **ISSUED BY** |
| | **First American Title Insurance Company** |
| **Eagle Policy** | **5020542-18113** |

**As soon as You Know of anything that might be covered by this Policy, You must notify Us promptly in writing at the address shown in Section 3 of the Conditions.**

### OWNER'S COVERAGE STATEMENT

This Policy insures You against actual loss, including any costs, attorneys' fees and expenses provided under this Policy. The loss must result from one or more of the Covered Risks set forth below. This Policy covers only Land that is an improved residential lot on which there is located a one-to-four family residence and only when each insured named in Schedule A is a Natural Person.

Your insurance is effective on the Policy Date. This Policy covers Your actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated in Covered Risks, after the Policy Date.

Your insurance is limited by all of the following:
- The Policy Amount
- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A
- The Exceptions in Schedule B
- Our Duty To Defend Against Legal Actions
- The Exclusions on page 4
- The Conditions on pages 4, 5 and 6

### COVERED RISKS

The Covered Risks are:
1. Someone else owns an interest in Your Title.
2. Someone else has rights affecting Your Title because of leases, contracts, or options.
3. Someone else claims to have rights affecting Your Title because of forgery or impersonation.
4. Someone else has an Easement on the Land.
5. Someone else has a right to limit Your use of the Land.
6. Your Title is defective. Some of these defects are:
   a. Someone else's failure to have authorized a transfer or conveyance of your Title.
   b. Someone else's failure to create a valid document by electronic means.
   c. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
   d. A document upon which Your Title is based was signed using a falsified, expired, or otherwise invalid power of attorney.
   e. A document upon which Your Title is based was not properly filed, recorded, or indexed in the Public Records.
   f. A defective judicial or administrative proceeding.
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
8. Someone else has a lien on Your Title, including a:
   a. lien of real estate taxes or assessments imposed on Your Title by a governmental authority that are due or payable, but unpaid;
   b. Mortgage;
   c. judgment, state or federal tax lien;
   d. charge by a homeowner's or condominium association; or
   e. lien, occurring before or after the Policy Date, for labor and material furnished before the Policy Date.
9. Someone else has an encumbrance on Your Title.
10. Someone else claims to have rights affecting Your Title because of fraud, duress, incompetency or incapacity.
11. You do not have actual vehicular and pedestrian access to and from the Land, based upon a legal right.
12. You are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B. However, You are not covered for any violation that relates to:
    a. any obligation to perform maintenance or repair on the Land; or
    b. environmental protection of any kind, including hazardous or toxic conditions or substances
    unless there is a notice recorded in the Public Records, describing any part of the Land, claiming a violation exists. Our liability for this Covered Risk is limited to the extent of the violation stated in that notice.

ALTA Homeowner's Policy of Title Insurance (Rev. 2-3-10)
As Modified by TIRBOP

## COVERED RISKS (Continued)

13. Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B.

14. The violation or enforcement of those portions of any law or government regulation concerning:
    a. building;
    b. zoning;
    c. land use;
    d. improvements on the Land;
    e. land division; or
    f. environmental protection,
    if there is a notice recorded in the Public Records, describing any part of the Land, claiming a violation exists or declaring the intention to enforce the law or regulation. Our liability for this Covered Risk is limited to the extent of the violation or enforcement stated in that notice.

15. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 14 if there is a notice recorded in the Public Records, describing any part of the Land, of the enforcement action or intention to bring an enforcement action. Our liability for this Covered Risk is limited to the extent of the enforcement action stated in that notice.

16. Because of an existing violation of a subdivision law or regulation affecting the Land:
    a. You are unable to obtain a building permit;
    b. You are required to correct or remove the violation; or
    c. someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
    The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

17. You lose Your Title to any part of the Land because of the right to take the Land by condemning it, if:
    a. there is a notice of the exercise of the right recorded in the Public Records and the notice describes any part of the Land; or
    b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

18. You are forced to remove or remedy Your existing structures, or any part of them – other than boundary walls or fences – because any portion was built without obtaining a building permit from the proper government office. The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

19. You are forced to remove or remedy Your existing structures, or any part of them, because they violate an existing zoning law or zoning regulation. If You are required to remedy any portion of Your existing structures, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

20. You cannot use the Land because use as a single-family residence violates an existing zoning law or zoning regulation.

21. You are forced to remove Your existing structures because they encroach onto Your neighbor's land. If the encroaching structures are boundary walls or fences, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

22. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it because Your neighbor's existing structures encroach onto the Land.

23. You are forced to remove Your existing structures which encroach onto an Easement or over a building set-back line, even if the Easement or building set-back line is excepted in Schedule B.

24. Your existing structures are damaged because of the exercise of a right to maintain or use any Easement affecting the Land, even if the Easement is excepted in Schedule B.

25. Your existing improvements (or a replacement or modification made to them after the Policy Date), including lawns, shrubbery or trees, are damaged because of the future exercise of a right to use the surface of the Land for the extraction or development of minerals, water or any other substance, even if those rights are excepted or reserved from the description of the Land or excepted in Schedule B.

26. Someone else tries to enforce a discriminatory covenant, condition or restriction that they claim affects Your Title which is based upon race, color, religion, sex, handicap, familial status, or national origin.

27. A taxing authority assesses supplemental real estate taxes not previously assessed against the Land for any period before the Policy Date because of construction or a change of ownership or use that occurred before the Policy Date.

28. Your neighbor builds any structures after the Policy Date – other than boundary walls or fences – which encroach onto the Land.

29. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.

30. Someone else owns an interest in Your Title because a court order invalidates a prior transfer of the title under federal bankruptcy, state insolvency, or similar creditors' rights laws.

31. The residence with the address shown in Schedule A is not located on the Land at the Policy Date.

32. The map, if any, attached to this Policy does not show the correct location of the Land according to the Public Records.

## OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS

We will defend Your Title in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy. We will pay the costs, attorneys' fees, and expenses We incur in that defense.

We will not pay for any part of the legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy. We can end Our duty to defend Your Title under section 4 of the Conditions.

**This Policy is not complete without Schedules A and B.**



| | Homeowner's Policy of Title Insurance For a One-To-Four Family Residence |
|---|---|
| *First American Title* | ISSUED BY<br>**First American Title Insurance Company** |
| **Eagle Schedule A** | POLICY NUMBER<br>**5020542-18113** |

Name and Address of Title Insurance Company:
**FIRST AMERICAN TITLE INSURANCE COMPANY, 1 First American Way, Santa Ana, California 92707**

File No.: **13-01-2-26795 FAT**                                    Premium: **$1,595.00**

Policy Amount: **$210,000.00**                              Policy Date (and Time): **November 25, 2013**

Deductible Amounts and Maximum Dollar Limits of Liability for Covered Risk 16, 18, 19 and 21:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A<br>or<br>$2,500<br>(whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A<br>or<br>$5,000<br>(whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A<br>or<br>$5,000<br>(whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A<br>or<br>$2,500<br>(whichever is less) | $5,000 |

Street Address of the Land: **202 West Drive, Pittsburgh, PA 15215**

1.  Name of Insured:

    **Robert G. Hague and Elizabeth A. Hague, husband and wife, by virtue of a deed from Marilyn J. Evert, dated November 15, 2013 and recorded November 25, 2013 in the Office of the Dept. of Real Estate of Allegheny County, Pennsylvania, in Book 15443, at Page 528.**

2.  Your interest in the Land covered by this Policy is: **Fee Simple**

3.  The Land referred to in this Policy is described as: **See Schedule A (Continued)**

BARRISTERS LAND ABSTRACT PREMIUM - PGH

By: _____
            Authorized Countersignature
    (This Schedule A valid only when Schedule B is attached)

---

Form 5020500-A (5-1-10)     Page 1 of 3                         ALTA Homeowner's Policy of Title Insurance (Rev. 2-3-10)
                                                                                                    Schedule A



| *First American Title* | Homeowner's Policy of Title Insurance<br>For a One-To-Four Family Residence |
|---|---|
| | ISSUED BY<br>**First American Title Insurance Company** |
| **Eagle Schedule A (Continued)** | POLICY NUMBER<br>**5020542-18113** |

File No.: **13-01-2-26795 FAT**

### LEGAL DESCRIPTION

ALL THAT CERTAIN lot a piece of ground situate in the Borough of Fox Chapel, County of Allegheny and Commonwealth of Pennsylvania, being known as Lot No. 126, in the Aspinwall - Delafield Company's Addition to Plan No. 4, as recorded in the Department of Real Estate Office of Allegheny County, Pennsylvania in Plan Book Volume 29 Page 148.

BLOCK AND LOT: 170-J-263



| *First American Title* | Homeowner's Policy of Title Insurance<br>For a One-To-Four Family Residence |
| --- | --- |
| | ISSUED BY<br>**First American Title Insurance Company** |
| **Eagle Schedule B** | POLICY NUMBER<br>**5020542-18113** |

File No.: **13-01-2-26795 FAT**

## EXCEPTIONS

In addition to the Exclusions, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Subject to all matters shown on the Plan as recorded in the Department of Real Estate Office of Allegheny County, Pennsylvania in Plan Book Volume 29, Page 148 including but not limited to any and all building lines and/or easements.

2. Coal and mining rights and all rights related thereto.

3. NOTICE: THIS DOCUMENT DOES NOT INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (See 52 P.S. 1551)

4. Oil, gas or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

5. Mortgage from Robert G. Hague and Elizabeth A. Hague to Mortgage Electronic Registration Systems, Inc, "MERS", solely as a nominee for Lender, Howard Hanna Mortgage Services in the original principal amount of $199,500.00 dated November 15, 2013, and recorded November 25, 2013, in the Office of the Dept. of Real Estate of Allegheny County, Pennsylvania in Book 43379, Page 245.

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date – this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

## CONDITIONS

1. **DEFINITIONS**
   a. Easement – the right of someone else to use the Land for a special purpose.
   b. Estate Planning Entity – a legal entity or Trust established by a Natural Person for estate planning.
   c. Known – things about which You have actual knowledge. The words "Know" and "Knowing" have the same meaning as Known.
   d. Land – the land or condominium unit described in paragraph 3 of Schedule A and any improvements on the Land which are real property.
   e. Mortgage – a mortgage, deed of trust, trust deed or other security instrument.
   f. Natural Person – a human being, not a commercial or legal organization or entity. Natural Person includes a trustee of a Trust even if the trustee is not a human being.
   g. Policy Date – the date and time shown in Schedule A. If the insured named in Schedule A first acquires the interest shown in Schedule A by an instrument recorded in the Public Records later than the date and time shown in Schedule A, the Policy Date is the date and time the instrument is recorded.
   h. Public Records – records that give constructive notice of matters affecting Your Title, according to the state statutes where the Land is located.
   i. Title – the ownership of Your interest in the Land, as shown in Schedule A.
   j. Trust – a living trust established by a Natural Person for estate planning.
   k. We/Our/Us – First American Title Insurance Company.
   l. You/Your – the insured named in Schedule A and also those identified in Section 2.b. of these Conditions.

2. **CONTINUATION OF COVERAGE**
   a. This Policy insures You forever, even after You no longer have Your Title. You cannot assign this Policy to anyone else.
   b. This Policy also insures:
      (1) anyone who inherits Your Title because of Your death;
      (2) Your spouse who receives Your Title because of dissolution of Your marriage;
      (3) the trustee or successor trustee of a Trust or any Estate Planning Entity to whom You transfer Your Title after the Policy Date;
      (4) the beneficiaries of Your Trust upon Your death; or
      (5) anyone who receives Your Title by a transfer effective on Your death as authorized by law.
   c. We may assert against the insureds identified in Section 2.b. any rights and defenses that We have against any previous insured under this Policy.
3. **HOW TO MAKE A CLAIM**
   a. Prompt Notice Of Your Claim
      (1) As soon as You Know of anything that might be covered by this Policy, You must notify Us promptly in writing.
      (2) Send Your notice to **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.** Please include the Policy number shown in Schedule A, and the county and state where the Land is located. Please enclose a copy of Your policy, if available.
      (3) If You do not give Us prompt notice, Your coverage will be reduced or ended, but only to the extent Your failure affects Our ability to resolve the claim or defend You.



CONDITIONS (Continued)

b.  Proof Of Your Loss
    (1)  We may require You to give Us a written statement signed by You describing Your loss which includes:
        (a)  the basis of Your claim;
        (b)  the Covered Risks which resulted in Your loss;
        (c)  the dollar amount of Your loss; and
        (d)  the method You used to compute the amount of Your loss.
    (2)  We may require You to make available to Us records, checks, letters, contracts, insurance policies and other papers which relate to Your claim.  We may make copies of these papers.
    (3)  We may require You to answer questions about Your claim under oath.
    (4)  If you fail or refuse to give Us a statement of loss, answer Our questions under oath, or make available to Us the papers We request, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.

**4.  OUR CHOICES WHEN WE LEARN OF A CLAIM**
a.  After We receive Your notice, or otherwise learn, of a claim that is covered by this Policy, Our choices include one or more of the following:
    (1)  Pay the claim;
    (2)  Negotiate a settlement;
    (3)  Bring or defend a legal action related to the claim;
    (4)  Pay You the amount required by this Policy;
    (5)  End the coverage of this Policy for the claim by paying You Your actual loss resulting from the Covered Risk, and those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay;
    (6)  End the coverage described in Covered Risk 16, 18, 19 or 21 by paying You the amount of Your insurance then in force for the particular Covered Risk, and those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay;
    (7)  End all coverage of this Policy by paying You the Policy Amount then in force, and those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay;
    (8)  Take other appropriate action.
b.  When We choose the options in Sections 4.a. (5), (6) or (7), all Our obligations for the claim end, including Our obligation to defend, or continue to defend, any legal action.
c.  Even if We do not think that the Policy covers the claim, We may choose one or more of the options above.  By doing so, We do not give up any rights.

**5.  HANDLING A CLAIM OR LEGAL ACTION**
a.  You must cooperate with Us in handling any claim or legal action and give Us all relevant information.
b.  If You fail or refuse to cooperate with Us, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.
c.  We are required to repay You only for those settlement costs, attorneys' fees and expenses that We approve in advance.
d.  We have the right to choose the attorney when We bring or defend a legal action on Your behalf.  We can appeal any

decision to the highest level.  We do not have to pay Your claim until the legal action is finally decided.
e.  Whether or not We agree there is coverage, We can bring or defend a legal action, or take other appropriate action under this Policy.  By doing so, We do not give up any rights.

**6.  LIMITATION OF OUR LIABILITY**
a.  After subtracting Your Deductible Amount if it applies, We will pay no more than the least of:
    (1)  Your actual loss;
    (2)  Our Maximum Dollar Limit of Liability then in force for the particular Covered Risk, for claims covered only under Covered Risk 16, 18, 19 or 21; or
    (3)  the Policy Amount then in force.
    and any costs, attorneys' fees and expenses that We are obligated to pay under this Policy.
b.  If We pursue Our rights under Sections 4.a.(3) and 5.e. of these Conditions and are unsuccessful in establishing the Title, as insured:
    (1)  the Policy Amount will be increased by 10% of the Policy Amount shown in Schedule A, and
    (2)  You shall have the right to have the actual loss determined on either the date the claim was made by You or the date it is settled and paid.
c.  (1)  If We remove the cause of the claim with reasonable diligence after receiving notice of it, all Our obligations for the claim end, including any obligation for loss You had while We were removing the cause of the claim.
    (2)  Regardless of 6.c.(1) above, if You cannot use the Land because of a claim covered by this Policy:
        (a)  You may rent a reasonably equivalent substitute residence and We will repay You for the actual rent You pay, until the earlier of:
            (i)  the cause of the claim is removed; or
            (ii)  We pay You the amount required by this Policy.  If Your claim is covered only under Covered Risk 16, 18, 19 or 21, that payment is the amount of Your insurance then in force for the particular Covered Risk.
        (b)  We will pay reasonable costs You pay to relocate any personal property You have the right to remove from the Land, including transportation of that personal property for up to twenty-five (25) miles from the Land, and repair of any damage to that personal property because of the relocation. The amount We will pay You under this paragraph is limited to the value of the personal property before You relocate it.
d.  All payments We make under this Policy reduce the Policy Amount, except for costs, attorneys' fees and expenses. All payments We make for claims which are covered only under Covered Risk 16, 18, 19 or 21 also reduce Our Maximum Dollar Limit of Liability for the particular Covered Risk, except for costs, attorneys' fees and expenses.
e.  If We issue, or have issued, a Policy to the owner of a Mortgage that is on Your Title and We have not given You any coverage against the Mortgage, then:
    (1)  We have the right to pay any amount due You under this Policy to the owner of the Mortgage, and any amount paid shall be treated as a payment to You

---

CONDITIONS (Continued)

under this Policy, including under Section 4.a. of these Conditions;

(2) Any amount paid to the owner of the Mortgage shall be subtracted from the Policy Amount of this policy; and

(3) If Your claim is covered only under Covered Risk 16, 18, 19 or 21, any amount paid to the owner of the Mortgage shall also be subtracted from Our Maximum Dollar Limit of Liability for the particular Covered Risk.

f.  If You do anything to affect any right of recovery You may have against someone else, We can subtract from Our liability the amount by which You reduced the value of that right.

### 7. TRANSFER OF YOUR RIGHTS TO US

a.  When We settle Your claim, We have all the rights and remedies You have against any person or property related to the claim. You must not do anything to affect these rights and remedies. When We ask, You must execute documents to evidence the transfer to Us of these rights and remedies. You must let Us use Your name in enforcing these rights and remedies.

b.  We will not be liable to You if We do not pursue these rights and remedies or if We do not recover any amount that might be recoverable.

c.  We will pay any money We collect from enforcing these rights and remedies in the following order:

(1) to Us for the costs, attorneys' fees and expenses We paid to enforce these rights and remedies;

(2) to You for Your loss that You have not already collected;

(3) to Us for any money We paid out under this Policy on account of Your claim; and

(4) to You whatever is left.

d.  If You have rights and remedies under contracts (such as indemnities, guaranties, bonds or other policies of insurance) to recover all or part of Your loss, then We have all of those rights and remedies, even if those contracts provide that those obligated have all of Your rights and remedies under this Policy.

### 8. THIS POLICY IS THE ENTIRE CONTRACT

This Policy, with any endorsements, is the entire contract between You and Us. To determine the meaning of any part of this Policy, You must read the entire Policy and any endorsements. Any changes to this Policy must be agreed to in writing by Us. Any claim You make against Us must be made under this Policy and is subject to its terms.

### 9. INCREASED POLICY AMOUNT

The Policy Amount will increase by ten percent (10%) of the Policy Amount shown in Schedule A each year for the first five years following the Policy Date shown in Schedule A, up to one hundred fifty percent (150%) of the Policy Amount shown in Schedule A. The increase each year will happen on the anniversary of the Policy Date shown in Schedule A.

### 10. SEVERABILITY

If any part of this Policy is held to be legally unenforceable, both You and We can still enforce the rest of this Policy.

### 11. ARBITRATION

a.  If permitted in the state where the Land is located, You or We may demand arbitration.

b.  The law used in the arbitration is the law of the state where the Land is located.

c.  The arbitration shall be under the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). You can get a copy of the Rules from Us.

d.  Except as provided in the Rules, You cannot join or consolidate Your claim or controversy with claims or controversies of other persons.

e.  The arbitration shall be binding on both You and Us. The arbitration shall decide any matter in dispute between You and Us.

f.  The arbitration award may be entered as a judgment in the proper court.

### 12. CHOICE OF LAW

The law of the state where the Land is located shall apply to this policy.

---

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Timothy Kemp
Secretary

Barristers Land Abstract Company
119 Gamma Drive
Pittsburgh, PA 15238
Phone 412-967-9000 Fax 412-967-0805

By: _____
Authorized Signature

(This Policy is valid only when Schedules A and B are attached)

**This jacket was created electronically and constitutes an original document**

Copyright 2006-2010 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# EXHIBIT B

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

SUSAN TUSICK,

        Plaintiff,

    v.

MARILYN EVERT, WALTER WADE MILLER,
ROWLAND E. MILLER and CAROL LYN
MILLER, husband and wife, JANE CIOCCA,
VERNON GAY, CHARLES W. MARCH and
JENNIFER N. MARCH, husband and wife,

        Defendants.

CIVIL DIVISION

No *GD* 13 - 20805

Code 011

COMPLAINT

Filed on behalf of Plaintiff:
Susan Tusick

Counsel of Record for this Party:
Richard T. Ernsberger, Esq.
Pa. I.D. 207064

BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222

(412) 391-2515

lidate Check
OPS4G1G12629
11-04-2013  02:54:02
GD-13-020805

DEPT. OF COURT RECORDS
CIVIL / FAMILY

13 NOV -4 PH 2: 52

FILED

### IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA

| | |
|---|---|
| SUSAN TUSICK, )| CIVIL DIVISION |

SUSAN TUSICK,                        )
                                     )        CIVIL DIVISION
        Plaintiff,                   )
    v.                               )        No
                                     )
MARILYN EVERT, WALTER WADE MILLER,   )
ROWLAND E. MILLER and CAROL LYN      )
MILLER, husband and wife, JANE CIOCCA, )
VERNON GAY, CHARLES W. MARCH and     )
JENNIFER N. MARCH, husband and wife, )
                                     )
        Defendants.                  )

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

Lawyer Referral Service
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, Pa 15219
Telephone: 412. 261.5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN TUSICK, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No |
| | ) | |
| MARILYN EVERT, WALTER WADE MILLER, | ) | |
| ROWLAND E. MILLER and CAROL LYN | ) | |
| MILLER, husband and wife, JANE CIOCCA, | ) | |
| VERNON GAY, CHARLES W. MARCH and | ) | |
| JENNIFER N. MARCH, husband and wife, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

NOW COMES the Plaintiff, Susan Tusick, by and through her undersigned counsel, files this *Complaint for Breach of Contract* (the "Complaint"), and respectfully avers as follows for her Complaint against Defendants Marilyn Evert, Walter Wade Miller, Rowland E. Miller and Carollyn Miller, husband and wife, Jane Ciocca, Vernon Gay, Charles W. March and Jennifer N. March, husband and wife:

## PARTIES

1.     Plaintiff, Susan Tusick, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00218-0000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

2.     Defendant, Marilyn Evert, is the owner of real property situated in the Borough of

1

Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00263-000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

3.      Defendant, Jane Ciocca, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00085-000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

4.      Defendants, Walter Wade Miller, Rowland E. Miller and Carol Lyn Miller, are the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00179-0000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

5.      Defendants, Charles W. March and Jennifer N. March, are the owners of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00202-0000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

6.      Defendant, Vernon L. Gay, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00179-0000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

**VENUE**

7.      Venue is appropriate because Plaintiff, Susan Tusick's, cause of action arose in Allegheny County.

2

## APPLICABLE LAW

(A) <u>Breach of Contract</u>

8.      The necessary material facts that must be alleged for a breach of contract are: there was a contract, the Defendants breached the contract, and Plaintiff suffered damages.

(B)    Damages

9.      The purpose of damage award in a breach of contract action is to place the non-breaching party, as nearly as possible, in the same position it would have occupied had there been no breach.

(C) <u>Specific Performance</u>

10.     Specific performance is an equitable remedy allowing a court to compel performance of a contract where the contract contains an agreement between the parties as to the nature of the performance. To obtain specific performance, Plaintiff must show (1) a valid agreement; (2) that the agreement has been violated; and (3) that Plaintiff does not have an adequate remedy at law.

## STATEMENT OF FACTS

(a) <u>West Drive Is a Private Road, Maintenance Is to Be Provided by the Landowners Abutting the Road.</u>

(i) <u>The Parties Title Is Derived from the Aspinwall Delafield Company Plan of Lots.</u>

11.     The tract in which the above-described lots is located in a subdivision of lands containing a large number of lots and blocks, situated in the Borough of Fox Chapel, in the Aspinwall Delafield Company's Plan of Lots laid out by the Aspinwall Delafield Company recorded in the Recorder's Office of Allegheny County, Pennsylvania in Plan Book Volume 29, Page 148.

3

12.    The properties are located on the side of a steep hill, on a private road, known as West Drive, which provides the only means of ingress and egress to Plaintiff's and Defendants' properties.

13.    Running downhill from its intersection with Windsor Road, West Drive is bound on one side by a ravine and an exposed brick drainage ditch that abuts an upward sloping hillside on the other and West Drive continues in a shape similar to the letter S to West Drive's intersection with Rutledge Drive.

14.    At the border of West Drive and the ravine, trees, and bushes were planted over the years to protect against soil erosion on the ravine side.

   (b) A Road Maintenance Agreement was signed in 1994 that required the parties and subsequent owners of the property to share in maintenance of the property.

15.    A homeowners agreement was signed on or about September 14, 1994 by Plaintiff, Susan Tusick, Defendants, Marilyn Evert, Jane Ciocca, Jane Ewing Miller, Vernon Gay and Sonja Gay, and Patrick Brooks and Sharon L. Brook to share the cost of maintenance and repair on West Drive and provides in its pertinent part as follows:

   1. If the private road requires any repairs or maintenance due to normal wear and tear, the parties hereto agree to share the cost of said maintenance and repair on the private road.

   2. If the private road requires any maintenance, repair or alterations due to any government ordinances or regulations, the parties hereto agree to share the cost of said maintenance and repair on said road.

   3. This agreement shall be a covenant running with the land, and shall be binding upon the parties, so long as they own the property and thereafter, shall be binding upon any subsequent owners of the property.

A tried and true copy of the West Drive Agreement that contains the covenants for repair to the road is attached as Exhibit 1 .

16.    It is believed and therefore averred that the subsequent owners of the property have

4

been provided notice of the at the West Drive Agreement from their predecessors in interest.

(c) <u>West Drive has fallen into a state of disrepair that impedes access to the property and harms housing value.</u>

17.     Subsequent to its last resurfacing, the private road known as West Drive has fallen into a state of disrepair and requires maintenance due to normal wear and tear and aging. To be specific, the following conditions have developed with the road:

a.   the road has developed a series of pavement failures, potholes, and ruts due to the wear and tear and age from automobile, truck, and emergency personnel traffic A tried and true copy of photograph demonstrating the pavement holes is attached as <u>Exhibit</u> 2;

b.   pieces of pavement can be picked up by hand out of the road surface A tried and true photograph the pavement demonstrating rocks and pavement pieces is attached as <u>Exhibit</u> 3;

c.   at the intersection of West Drive and Windsor Road, the repeated resurfacing of the road has created a ridge that is higher on the Windsor Road side the diverts water into the adjacent valley and is causing significant soil erosion.  <u>See</u> photograph the ridge in West Drive that demonstrates the ridge in the road the soil erosion hereinafter identified as Exhibit 4;

i.       it is believed and therefore averred that the diverted water is causing soil erosion on the non-gutter side that could result in a landside in the future;

ii.      the soil erosion at the top of the hill can be seen from the plants and vegetation sliding toward the ravine side of West Drive;

5

d.    the exposed brick gutter on West Drive has failed in several locations and due to previous pavement overlays there is a steep drop off from the road to the gutter;

e.    the exposed gutter on West Drive that runs the length of West Drive fills with road debris during storms, See photograph of the intersection of gutter that demonstrates the road debris herein after Exhibit 5 to Plaintiff's Complaint;

f.    the catch basin fills with debris and keeps water from entering the sewer system See photograph of catch basis that demonstrates the road debris herein after Exhibit 6 to Plaintiff's Complaint;

g.    storm water from the hillside and road is not being carried in the exposed gutter and resulted in pavement failure and water being channeled into neighboring properties;

h.    storm water that cannot be carried away in the gutter will freeze during winter conditions;

18.    Based upon the physical state of West Drive, deficiencies exist that endanger the public health, safety, and welfare, appellants Plaintiff, Defendants, and the general public face. To be specific, the following problems exist:

i.    increased wear and tear on their automobiles;

j.    tripping hazards for the general public walking West Drive;

k.    impeded access to the property by emergency personal, *i.e.* ambulances, police and fire;

l.    diminished home values because of the condition of the road;

m.    water that is being directed onto the road surface that would normally be carried away by the gutter is causing potentially hazardous ice to develop on the road;

6

n.   water that is being directed onto personal property that is causing the potential for

damage to downhill homes; and

o.   the estimated cost of repair is prohibitive for one homeowner to assume on behalf of

the properties abutting the road.

19.    Due to the road's state of disrepair, Plaintiff, Susan Tusick, provided additional

financial support and labor for the maintenance of the road beyond what is contemplated in the West

Drive Agreement.

p.   Plaintiff, Susan Tusick, placed Belgian blocks to fill in deteriorated pavement;

q.   Plaintiff, Susan Tusick, has paid for spot fills of potholes on the road;

r.   Plaintiff, Susan Tusick, has contacted the Borough of Fox Chapel to have the

intersection of West Drive and Windsor Road repaired;

s.   Plaintiff Susan Tusick has contacted the Borough of Fox Chapel to the storm drain

repaired through the placement of in ground storm drains and pipes; and

t.   Plaintiff Susan Tusick has hired labor to clean the gutter and catch basis in 2012.

(d) Plaintiff, Susan Tusick, Has Repeatedly Requested Defendants Honor the West Drive
    Agreement.

20.    In reliance upon the West Drive Agreement, Plaintiff, Susan Tusick,  sent letters

dated August 7, 2010 to the Defendants requesting that meeting to discuss having the road repaired.

A tried and true copy of the August 7, 2010 that requests a meeting to discuss the repair of the road

is attached as Exhibit 7.

21.    On or about July 23, 2013, Plaintiff, Susan Tusick, sent a letter to Defendants stating

that she had received bids for the repair of the road. A tried and true copy of July 23, 2013 letter as

7

to the repair of the road Exhibit 8.

22.    Despite Plaintiff, Susan Tusick's, efforts to date, Defendants have failed act upon their obligations to repair and maintain the road under the West Drive Agreement.

(e) Plaintiff, Susan Tusick, Has Received Bids for the Repair of the Road and Retained an Engineering Firm to Provide an Expert Opinion on the Needed Repairs.

23.    In light of her concerns, Plaintiff, Susan Tusick, contacted contractors to receive bids and estimates for the repair and maintenance of the road.

24.    Plaintiff, Susan Tusick, received a bid from C&D Asphalt Paving for the cost of the road repair for $62,000.00; however, the bid does not include the cost of repair of the storm drain. A tried and true copy of the C&D Asphalt Bid is attached as Exhibit 9.

25.    C&D Asphalt Paving stated that it would perform the following work:

u.   mill and excavate roadway down to solid base;

v.   hall away the debris;

w.   install and compact sone and milling base as needed;

x.   repair and clean the drain as needed;

y.   install a 21/2 inch BCBC asphalt base and compact; and

z.   seal sides of roadway with AC;

26.    On or about July 24, 2013, Plaintiff, Susan Tusick, received a bid of $41,172.18 from Brant Paving Incorporated for the cost of road repair to West Drive; however, the bid does not include the cost of the repair to the storm drain. A tried and true copy of the Brant Paving Incorporated is attached as Exhibit 10.

(f) The Borough of Fox Chapel Sent a Letter Warning the Homeowners of Liability for the Dilapidated Condition of West Drive.

8

27.     On or about September 18, 2013, Plaintiff, Susan Tusick, and Defendants received a letter from the Borough of Fox Chapel, wherein the Borough of Fox Chapel, which warned the homeowners of personal liability of the condition of the road due to storm water management, and letter states:

> During heavy rainfall, and most recently two weeks ago, storm water from West Drive flooded downstream property owners along Rutledge and Valley Drives caused by the lack of maintenance of the drainage facilities along West Drive, a private road. Upon investigating complaints received from the downstream property owners, it became readily apparent that the storm drains along West Drive have not been cleaned out and debris removed for quite some time. Please be advised that all storm facilities must be periodically checked for debris in order to eliminate potential flooding and hazardous conditions for vehicles and pedestrians. Property owners will be liable for any injury or damage that may occur from water or debris left on private property and/or the public roadway.

See Letter dated September 18, 2013, where the Borough of Fox Chapel requests that the property owners along West Drive address the storm run off problems, hereinafter Exhibit 10 to Plaintiff's complaint.

(g) Hampton Technical Associates, Inc. Assessment of the Conditions on West Drive Demonstrate Pavement Deterioration and Drainage Failures.

28.     On or about October 7, 2013, Plaintiff, Susan Tusick, received an opinion from Hampton Technical Associates engineering as to Hampton Technical Associates, Inc. assessments of the condition of the pavement and draining facilities of West Drive. A tried and true copy of the Hampton Technical Agreement that contains recommendations for repair to the road is attached as Exhibit 11.

29.     In its assessment of West Drive, Hampton Technical Associates, Inc. made the following findings:

4.1 Pavement Conditions

9

The majority of the pavement in West Drive is in a failing state. The entire road with the exception of the relatively new overlay area is covered with medium to high level cracking, pieces of pavement can be picked out of the road surface by hand many unfilled potholes, patches on patches, and bad dips and sags. Photographs 4-15 show several of the deteriorating areas of West Drive.

4.2 Drainage Facilities Condition

The brick gutter has failed or is filing in multiple locations along West Drive. See photographs 21-27. Due to previous payment overlays and patching in several locations steep drop offs have developed between the pavement and the brick gutter. See photographs 16-18. The shoulder of Windsor Drive east of its intersection with West Drive is highly eroded and washing material in to the gutter of West Drive. See photographs 19 & 20.

See Exhibit 11 at page 2.

30.    In its assessment of West Drive, Hampton Technical Associates, Inc. made the

following recommendations for repair:

5.1 Pavement Restoration

Full depth pavement replacement should occur where high level cracking, large potholes, and major pavement deterioration exist. Full depth pavement replacement requires removing the existing pavement and then reconstructed the roadway grade sub-base and pavement. Other areas may be overlaid with a new lawyer of pavement with the following exception. In area where a steep drop of exists or will existing between the gutter and roadway then existing pavement should be removed and replaced.

5.2 Drainage Facilities Restoration

The Borough of Fox Chapel should be approached to repair the shoulder of Windsor Drive at the intersection of West Drive. See photographs 19 7 20. Areas where the gutter is deteriorating or has failed should be repaired paving the gutter. The paved gutter should have proper gravel sub-base and pavement thickness. The gutter at the intersection of West Drive and Rutledge Drive should be reestablished by removing the debris and channel the runoff to the storm sewer in Rutledge Drive. If problem areas persist consideration should be given to removing the brick gutter and installing curb and inlets along West Drive.

See Exhibit 11 at page 3.

(h) Defendants Actions Constitute a Breach of the West Drive Agreement.

10

31.    Despite adequate notice of the conditions on West Drive, Defendants have failed to honor the West Drive Agreement.

32.    Unimpeded access to the road is necessary for police, fire, and ambulance access to Plaintiff's and Defendants' properties.

33.    Unimpeded access to the road is necessary for pedestrians that walk along West Drive and have the risk of falling on the rutted and dilapidated road.

34.    Defendants' continued refusal to make the necessary repairs to West Drive constitutes a breach of the West Drive Agreement.

35.    Defendants' have no lawful basis for refusing to honor their obligations under the West Drive Agreement.

36.    It is believed and therefore averred that some of Defendants have listed or are contemplating listing their houses for sale without contributing to the West Drive Agreement.

37.    It is believed and therefore averred that Defendant, Marilyn Evert, has entered into a contract for sale of her property.

38.    In sum, Defendants' compliance with the West Drive Agreement is essential to provide access to both Plaintiff's and Defendants' properties.

40.    Defendants have refused either to explore repairing the road or to present a viable alternative to the needed road repairs.

41.    By refusing to respond to Plaintiffs demands for road repair or present a viable alternative to the needed road repairs, Defendants have breached the West Drive Agreement.

42.    Plaintiff, Susan Tusick, after devoting time and money to personally pay for the road

11

repairs, has suffered damages from Defendants breach of the West Drive Agreement.

43.    The cost of repair to West Drive is prohibitive for Plaintiff Susan Tusick to undertake on her own.

44.    Moreover, without enforcement of the West Drive Agreement, Plaintiff Susan Tusick, has no remedy at law to repair the portions of the road located on neighboring properties.

45.    Accordingly, Plaintiff, Susan Tusick, seeks several forms of relief for money damages (where such damages can be quantified) and in the alternative specific performance - as appropriate to the violation of the West Drive Agreement.

WHEREFORE, Plaintiff, Susan Tusick, respectfully demands judgment against Defendants with attorney's fees, expert witness fees, interest, costs of the suit, and any other relief this Court deems just and proper.

Respectfully Submitted,

Richard T. Ernsberger, Esq.
Pa. I.D. 207064
BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222
(412) 391-2515

12

## VERIFICATION

In accordance with this verification, I, Susan Tusick, hereby verify that the statements in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge and belief. This statement and verification is made subject to the penalties of the 18 Pa. C.S. 4904 relating to unsworn falsifications to authorities, which provides that I knowingly make false statements, I may be subject to criminal penalties.

Date __10 |30| 2013__          _____
                                Susan Tusick

## PRIVATE ROAD MAINTENANCE AGREEMENT

THIS AGREEMENT made this _17th_ day of _September_, 1994; by
between and among:

| | |
|---|---|
| Marilyn Evert | 202 West Drive, Pittsburgh, PA 15215 |
| Jane Ciocca | 200 Rutledge Dr., Pittsburgh, PA 15215 |
| Jane Ewing Miller | 200 West Drive, Pittsburgh, PA 15215 |
| Thomas & Susan Tusick | 204 West Drive, Pittsburgh, PA 15215 |
| Brooks T. & Sharon L. Patrick | 112 West Drive, Pittsburgh, PA 15215 |
| Vernon Gay & Sonja Gay | Shady Lane, Pittsburgh, PA 15215 |

EXHIBIT
1
PENGAD 800-631-6989

### WITNESSETH:

WHEREAS, the above named parties are the owners of real property
along West Drive, a private road in Fox Chapel Borough, county of
Allegheny Pennsylvania; and

WHEREAS, the above named owners desire to establish an agreement for
the maintenance and repair of the said road; and

NOW, THEREFORE, in consideration of the above recitals and the
covenants herein contained and intending to be legally bound, the parties
hereto agree as follows:

1.    If the private road requires any repair or maintenance due to
normal wear and tear, the parties hereto agree to share the cost of said
maintenance and repair on the private road.

2.    If the private road requires any maintenance, repair or
alteration due to any government ordinance or regulation, the parties
hereto agree to share the cost of said maintenance and repair on said
road.

3.    This agreement shall be a covenant running with the land, and
shall be binding upon the parties, so long as they own the property and
thereafter, shall be binding upon any subsequent owners of the property.

WITNESS our hands and seals as of the day and year first written.

WITNESS:

_Marilyn Evert_
Marilyn Evert

_Jane Ewing Miller_
Jane Ewing Miller

_Susan Tusick_
Susan Tusick

_Sharon L. Patrick_
Sharon L. Patrick

_Jane Ciocca_
Jane Ciocca

_Thomas Tusick_
Thomas Tusick

_Brooks T. Patrick_
Brooks T. Patrick

_Vernon L. Gay_
Vernon Gay

_____
Sonja I. Gay



EXHIBIT

2



EXHIBIT

3

EXHIBIT

4





# Mike and Susan (Tusick) Vetovich

21 Windsor Road
Pittsburgh, PA  15215
412-781-8896
stusick@tusickarchitects.com

August 7, 2010

Dear Neighbors;

I have some facts and information about West Drive:

1.  As you all know, West Drive has a sanitary line running under the road.    It is
    actually a combination line-storm/sanitary.

2.  The Federal Government has mandated that storm and sanitary be separated.
    The Borough is starting this process. It has started on Waldheim. (This is
    information from Chuck at the borough.  Can't remember his title, but he is
    in charge of road maintenance.)

3.  West Drive has five manhole covers and some water authority covers.

4.  The last major road resurfacing was when I was I high school
    and we are planning our 40th reunion; so, it was more than 40 years ago.

5.  Asphalt with age becomes hard, inflexible and breaks up.  Its movement
    breaks up the multiple layers of patch.

6.  The road has numerous patches which are breaking up due to age, weather
    and usage.

7.  Next July the borough plans to rebuild the brick shafts that lead up to the
    manhole covers.  The brick shafts are starting to deteriorate due to age.
    The borough will be cutting 8' x 8' holes in the road to do their work.

8.  At this time, the borough will raise or lower the manhole covers for free.
    I do not know if the water authority will raise or lower their cover for free
    They still need to be contacted.

9.  Asphalt with age becomes hard, inflexible and breaks up.  Its movement
    breaks up the multiple later of patch.

10. If you walk the road, you will notice that the slope of the road due to
    patching and resurfacing has changed the water flow from all the water
    being directed to the brick gutter to a portion of the water going the opposite
    direction.  This is deteriorating the non gutter side of the road and the
    hillside. If we do not address this situation, the road will eventually collapse.
    I do not know if you noticed, two years ago to stop the deterioration, we
    filled the water made rut with Belgium blocks.  Mike and I have never
    invoiced anyone for this expense which was over two thousand dollars.

11. Due to the age, micro burst and the heavy show, the road is breaking up.
    Recently, I began researching solutions.  That is how I found out about the
    borough's planned manhole shaft work.  It made no financial sense to



EXHIBIT
7

do major work on the road this year; so, I obtaining quotes to patch the major holes.   The quotes came in over $2,700. John Boswell stopped by our house and stated that he had left over asphalt from patching Delafield Road. (one small truck load)  We negotiated and he patched the road that day for $2,000.00   This solved the patching of the holes is a cost effective solution.  *See attached invoice.  I paid through my business, Tusick & Associates Architects, Inc., because it had the available funds.  I need to Reimburse the business.  It is $400 dollars per household.  Please pay ASAP.  Thank you.*

12. On the lower portion of the road, the brick gutter is in need of repair. This is because the gutters are not cleaned out.   The homeowners in this portion of the road should address this issue.

13. Additionally, tree branches hanging lower over the road, bushes, vines and weeds are either hanging over the road too far, growing over the road or growing in the road.

14. The railroad ties on the road are missed aligned and some need to be replaced.

15. Property owners need to maintain the road or major maintenance concerns occur.  This is where we are and still maintenance needs to be done. Gutters need to be cleaned out, branches need to be picked up, weeds and vines need to be removed.  If you even did this once a month in the non winter months, our road would look fine.  If you cannot personally, do the work, hire someone.  It needs to be done.  Accept your responsibility.

16.  Due to the age, micro burst and the heavy show, the road is breaking up. Recently, I began researching solutions.  That is how I found out about the borough's planned manhole shaft work.  It made no financial sense to do major work on the road this year; so, I obtaining quotes to patch the major holes.   The quotes came in over $2,700.  John Boswell stopped by our house and stated that he had left over asphalt from patching Delafield Road. (one small truck load)  We negotiated and he patched the road that day for $2,000.00   This solved the patching of the holes is a cost effective solution.  *See attached invoice.  I paid through my business because it had the available funds.  I need t be reimbursed.   It is $400 dollars per household.  Please pay ASAP.  Thank you.*

17.  Also, we are talking to the Christie.  They live at the top of the hill and their stone wall has been falling down for over five years.  They dump their sump pump water and gutter water down their hillside to the road by way of a white PVC pipe.  This caused their upper and lower stone wall to collapse.  By not repairing their stone wall and leaving the stones in the gutter, the water was diverted onto the road causing damage.  We are asking the Christie to address this issue and suggested they contact their homeowner insurance carrier.  See attached letter.

18. I will keep you informed about the proposed road resurfacing next year. Please plan your finances so you have funds available.  We will have a meeting when the different costs and options come in.

Thank you

## Mr. Michael Vetovich and Susan B. Tusick-Vetovich
21 Windsor Road
Pittsburgh, PA 15215
Tele: 412 – 781 - 8896

July 23, 2013

Dear Neighbors:

I believe that everyone received Marilyn Evert's letter dated November 29, 2012 concerning the condition of the road. (Enclosed is the letter). She states that the road needs to be repaired and I agree with her. The condition of the road is hurting the value of everybody's property. It is one of the worst roads in Fox Chapel. The first is lower West Drive. Our road is the second worst road.

Because of this fact, I have contacted three companies to provide proposal for the milling and resurfacing of West Drive. This work shall be done before the fall of 2013. Every house should and shall pay it share. Once this is done properly, the road shall be fine for many years and only require gutter cleaning and snow plowing. I will inform you within the next few weeks what the bids and who will be awarded the bid. If you are interested, you can assist in obtaining bids, but they all must have the same scope of work and quality of work.

Finally, the following amount are still due.

| Family | 2012-2013 snow plowing | 2012 Road Repair |
|---|---|---|
| Vernon Gay | $ 224.00 | $ 666.67 |
| Marches | $ 224.00 | $ 666.67 |
| Marilyn Evert | $ 224.00 | $ 66.67 |
| Wade Miller | $ 224.00 | -0- |
| Ciocca-Blank | $ 224.00 | $ 666.67 |
| Tusick-Vetovich | -0- | -0- |

Everyone was sent an invoice by certified mail May, 2013 and only Vernon Gay and Marilyn Evert picked up their invoices. This is your second request. If I do not receive payment by August 1, I will be forced to go the magistrate. Please make checks payable to Susan B. Tusick. Thank you

Sincerely,
Susan Tusick



EXHIBIT
8

# Susan Tusick

# Valley Road

# C&D Asphalt

# Paving

### Description

- Mill and excavate roadway down to solid base ; haul away debris
- Excavate bad area for full depth repair
- Install stone and milling base as needed and compact
- Cut keyways at all driveways at beginning and end of roadways at catch basins
- Repair and clean drain as needed
- Install 2½ in. BCBC asphalt base and compact
- Install 1¾ in. I MOD and compact
- Seal sides of roadway with AC
- Seal all edges

**412-773-0094**

| Expenses | |
|---|---|
| ¼ Upon Acceptance and Mobilization | $15,500.00 |
| ¼ After Milling and Excavation | $15,500.00 |
| ¼ After Base is Installed | $15,500.00 |
| ¼ Upon completion | $15,500.00 |
| Total Expenses | **$62,000** |

EXHIBIT

9

If you have any questions
or concerns regarding this
estimate, contact:

Owner: John Donofrio

Phone: (412) 773-0094

**Please write out checks to John Donofrio**

DBA CD Asphalt

Bid #1: Excavation and Milling

| Susan Tusick |
| Valley Road |

# C&D Asphalt

# Paving

### 412-773-0094

| Description |
| --- |
| ➢ Mill and excavate roadway down to solid base ; haul away debris |
| ➢ Excavate bad area for full depth repair |
| ➢ Install stone and milling base as needed and compact |
| ➢ Cut keyways at all driveways at beginning and end of roadways at catch basins |
| ➢ Repair and clean drain as needed |
| ➢ Install 2½ in. BCBC asphalt base and compact |
| ➢ Install 1½ in. ID²MOD and compact |
| ➢ Seal sides of roadway with AC |
| ➢ Seal all edges |

If you have any questions or concerns regarding this estimate, contact:

**Owner: John Donofrio**

**Phone: (412) 773-0094**

| Expenses | |
| --- | --- |
| ¼ Upon Acceptance and Mobilization | $15,500.00 |
| ¼ After Milling and Excavation | $15,500.00 |
| ¼ After Base is Installed | $15,500.00 |
| ¼ Upon completion | $15,500.00 |
| Total Expenses | $62,000 |

**\*\*Please write out checks to John Donofrio\*\***

**DBA CD Asphalt**

# BRANDT PAVING INC.

_____ **Tops in Quality Since 1940** _____

**Please sign and return to ......** 897 Perry Highway, Suite 100
Harmony, PA 16037
Phone:  724-368-9451
Fax:   724-368-0176     Email: contact@brandtpaving.com

Proposal Submitted to:                    Susan Tusick                    Phone 412-781-8896

Address:                                  21 Windsor Rd
                                          Pittsburgh PA 15215              Date: July 24, 2013
                                                                          stusick@tusickarchitects.com

We hereby submit our proposal for:    **Roadway Repaving**

| ITEM | | APPROX. QUANTITY | UNIT COST | TOTAL |
|---|---|---|---|---|
| | **1120 SY** | | | |
| 1. | Mill existing asphalt roadway full depth in place. | | | |
| 2. | Fine grade millings to stabilize existing sub base. | | | |
| 3. | Haul any excess millings from site. | | | |
| 4. | Proof roll sub base for compaction. | | | |
| 5. | Pave with a 2 ½" compacted depth binder course | | | |
| | and a 1 ½" compacted depth wearing course. | 1120sy | LS | $41,172.18 |
| | | | | |
| | **TERMS OF PAYMENT:**    30% Down...Balance Upon Completion | | | |

Due to present instability within the oil market; our costs are based upon the current Asphalt Cement Index per liquid ton. In the event of change to this index, our pricing will be adjusted accordingly without notice.



EXHIBIT
10

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986




# HAMPTON TECHNICAL ASSOCIATES, INC.
### *Engineering Land Surveyors*
### CORPORATE OFFICE
### 35 Wilson Street – Suite 201
### Pittsburgh, PA 15223
Telephone #: (412) 781-9660
Fax #: (412) 781-5904
E-mail: ChrisS@hampton-tech.net
Web Site: www.hampton-tech.com

# West Drive
# Roadway Condition Assessment
## Job # 13-10986

## Prepared For
### **Susan Tusick**
204 WEST DRIVE
PITTSBURGH, PA 15215

## Location
### FOX CHAPEL BOROUGH
### ALLEGHENY COUNTY, PENNSYLVANIA

## Date Prepared
### October 7, 2013





EXHIBIT

11

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## Table of Contents

__DESCRIPTION__                                                                                  __PAGE__

1.0   **INTRODUCTION**
      1.1      Authority......................................................................................................................1
      1.2      Objective......................................................................................................................1
      1.3      Scope ..........................................................................................................................1

2.0   **ROADWAY EXPLORATION PROGRAM**
      2.1      Site Inspection .............................................................................................................1

3.0   **GENERAL SITE CONDITIONS**
      3.1      Project Location ...........................................................................................................2
      3.2      Site Conditions ............................................................................................................2

4.0   **DISCUSSION AND EVALUATION OF SITE CONIDTIONS**
      4.1      Pavement Condition ....................................................................................................2
      4.2      Drainage Facilities Condition ....................................................................................2
      4.3      Wall Condition ............................................................................................................3

5.0   **RECOMMENDATIONS**
      5.1      Pavement Restoration ..................................................................................................3
      5.2      Drainage Facilities Restoration...................................................................................3
      5.3      Wall Restoration ..........................................................................................................3

**APPENDIX A**
      Locations Map................................................................................................................7

**APPENDIX B**
      Photograph Location Key Map ......................................................................................11
      Photographs.................................................................................................................13-42

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## 1.0    INTRODUCTION

### 1.1    Authority

This report has been prepared per the request of Ms. Susan Tusick on October 2, 2013.

### 1.2    Objective

The overall objective of this report is to assess the condition of the pavement and drainage facilities of West Drive.  West Drive is a private drive connecting Rutledge Rive and Windsor Drive in Fox Chapel Borough Allegheny County.

### 1.3    Scope

In order to achieve the above objective, the investigation program consisted of the following

- Conduct field reconnaissance.

- Provide engineering involvement during all phases of the investigation and analysis of all data acquired.

- Prepare a roadway condition assessment that documents the data and analyses performed as well as present the discussion and evaluation of the roadway conditions and the conclusions regarding the roadway conditions, and a set of recommendations for remediation of the roadway

## 2.0    ROADWAY EXPLORATION PROGRAM

A visual inspection was conducted at the site on October 4, 2013 by Hampton Technical Associates, Inc. to determine the conditions of the pavement and drainage facilities of West Drive.

### 2.1    Site Inspection

The site inspection program consisted of visually inspected the site conditions and obtaining photographs of the aforementioned conditions.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## 3.0   GENERAL SITE CONDITIONS

### 3.1   Project Location

West Drive is located between Windsor Drive and Rutledge Drive in Fox
Chapel Borough, Allegheny County.  West Drive is a private drive connecting
the aforementioned roadways and is maintained by the home owners along West
Drive.

### 3.2   Site Conditions

West Drive is a paved roadway with gutters.  The roadway is a mix of new
overlay, patches and deteriorating pavement.  The new pavement overlay is
located shortly after the entrance and continues for several hundred feet.  This is
shown on photographs 1-3.  The gutters are brick and on the high side of the
road a stone wall is integrated with the gutter in several locations.  The stone
walls are dry stacked field stones.  The walls range from 1 foot to several feet
along West Drive.  The walls act has retained walls on the high side of the
roadway.

## 4.0   DISCUSSION AND EVALUATION OF SITE CONDITIONS

This section of the report presents the general conditions of the roadway and
supporting facilities.

### 4.1   Pavement Condition

The majority of the pavement in West Drive is in a failing state.  The entire road
with the exception of the relatively new overlay area is covered with medium to
high level cracking, pieces of pavement can be picked out of road surface by
hand, many unfilled potholes, patches on patches, and bad dips and sags.
Photographs 4-15 show several of the deteriorating areas of West Drive.

### 4.2   Drainage Facilities Condition

The brick gutter has failed or is failing in multiple locations along West Drive.
See photographs 21-27.  Due to previous pavement overlays and patching in
several locations steep drop offs have developed between the pavement and the
brick gutter.  See photographs 16-18.  The shoulder of Windsor Drive east of its
intersection with West Drive is highly eroded and washing material in to the
gutter of West Drive.  See photographs 19 & 20.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

4.3  Wall Condition

The dry stacked field stone walls have collapsed in several locations and are being pushed by soil creep. See photographs 28-30.

## 5.0  RECOMMENDATIONS

The recommendations presented in this report are based on conditions disclosed by the site reconnaissance. With this in mind, the following recommendations are presented for pavement, wall, and gutter restoration.

5.1  Pavement Restoration

Full depth pavement replacement should occur where high level cracking, large potholes, and major pavement deterioration exist. Full depth pavement replacement requires removing the existing pavement and then reconstructed the roadway gravel sub-base and pavement. Other areas may be overlaid with a new layer of pavement with the following exception. In areas were a steep drop of exists or will existing between the gutter and roadway the existing pavement should be removed and replaced.

5.2  Drainage Facilities Restoration

The Borough of Fox Chapel should be approached about repaired the shoulder of Windsor Drive at the intersection of West Drive. See photographs 19 & 20. Areas where the gutter is deteriorating or has failed should be repaired by paving the gutter. The paved gutter should have the proper gravel sub-base and pavement thickness. The gutter at the intersection of West Drive and Rutledge Drive should be reestablished by removing the debris and channel the runoff to the storm sewer in Rutledge Drive. If problem areas persist consideration should be given to removing the brick gutter and installing curb and inlets along West Drive.

5.3  Wall Restoration

The ultimate solution would involve replacing the dry stacked field stone walls with an engineered wall system. This option would likely be cost prohibitive. If funding is not available for wall replacement then spot repairs at the locations of wall failure should be completed.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

# Appendix A – Location Map

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986



Scale: NTS
## FIGURE 1
## U.S.G.S. SITE LOCATION MAP
### PITTSBURGH EAST, PA QUADRANGLES

 

# HAMPTON TECHNICAL ASSOCIATES, INC.
*Engineering Land Surveyors*
**CORPORATE OFFICE**
**35 Wilson Street – Suite 201**
**Pittsburgh, PA 15223**

Page 7 of 16

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## Appendix B – Photograph Location Key Map & Photographs

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986



**Scale: NTS**

**FIGURE 2**
**PHOTOGRAPH LOCATION KEY MAP**

 **HAMPTON TECHNICAL ASSOCIATES, INC.** 
*Engineering Land Surveyors*
**CORPORATE OFFICE**
**35 Wilson Street – Suite 201**
**Pittsburgh, PA  15223**



















































## CERTIFICATE OF SERVICE

I, Richard T. Ernsberger, Esquire do hereby certify that a true and correct copy of the

foregoing Complaint was served upon the following parties by Sheriff Service on or about the

_4_ day of November, 2013, as follows:

Marilyn Evert
5825 5th Avenue, Apt. 204
Pittsburgh, PA 15232

Walter Wade Miller
200 West Drive
Pittsburgh, PA 15215

Roland Miller
1519 North Center Avenue
Somerset, PA 15501

Carol Lyn Miller
1519 North Center Avenue
Somerset, PA 15501

Jane Ciocca
908 Guyasuta Lane
Pittsburgh, PA 15215

Verona Gay
114 West Drive
Pittsburgh, PA 15215

Charles W. March
112 West Drive
Pittsburgh, PA 15215

Jennifer March
112 West Drive
Pittsburgh, Pa 15215

BEHREND & ERNSBERGER, P.C.

Richard T. Ernsberger, Esq.
Pa. I.D. 207064
BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222
(412) 391-2515

13

## **VERIFICATION**

I, Robert G. Hague, hereby verify that the facts set forth in the foregoing Complaint in Civil Action at Law are true and correct to the best of my knowledge, information, and belief. I understand that any false statements made herein are subject to the penalties of 18 P.S. §4904 relating to unsworn falsification to authorities.

Date: _Jan 16, 2020_

Robert G. Hague

## **VERIFICATION**

I, Elizabeth A. Hague, hereby verify that the facts set forth in the foregoing Complaint in Civil Action at Law are true and correct to the best of my knowledge, information, and belief. I understand that any false statements made herein are subject to the penalties of 18 P.S. §4904 relating to unsworn falsification to authorities.

Date: 1 - 16 - 2020

Elizabeth A. Hague

## CERTIFICATE OF COMPLIANCE

Undersigned Counsel certifies that this filing complies with the provision of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Lawrence P. Lutz, Esquire
PA ID 34606
Attorney for Plaintiffs
LUTZ PAWK & BLACK
The NexTier Center Building
Suite 102
101 E. Diamond Street
Butler, PA 16001
(724) 285-3400

eme Court of Pennsylvania

Court of Common Pleas

Civil Cover Sheet

Allegheny _____ County

| For Prothonotary Use Only: | *TIME STAMP* |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: <br> Robert G. Hague and Elizabeth A. Hague | Lead Defendant's Name: <br> First American Title Insurance Company |
|---|---|

| **Are money damages requested?** ☒ Yes ☐ No | Dollar Amount Requested: <br> (check one) | ☐ within arbitration limits <br> ☒ outside arbitration limits |
|---|---|---|

| **Is this a *Class Action Suit*?** ☐ Yes ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: Lawrence P. Lutz, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- _____
- _____
- ☒ Other: BREACH OF CONTRACT _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*