IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SNUG & MONK PROPERTIES, INC., A Pennsylvania Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) Civil Action No. 20-318 |
| VALERIE DRNOVSEK, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Presently before the Court is the Motion for Summary Judgment Against Plaintiff Valerie Drnovsek and brief in support filed by Defendant First American Title Insurance Company ("First American") in this matter (Docket Nos. 48, 49), the response and brief in opposition filed by Plaintiff Valerie Drnovsek ("Drnovsek") (Docket Nos. 56, 57), and First American's reply (Docket No. 59). In considering the motion and briefs, the Court has also considered the parties' concise statements and counter statements of material facts that are included within the motion and response thereto, as well as the exhibits that were filed in connection with the parties' briefs.

For the reasons set forth herein, First American's Motion for Summary Judgment is granted.

I.     **Factual Background**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to First American's summary judgment motion. On February 18, 2020, Drnovsek filed a Complaint against First American in the Court of Common Pleas of Allegheny County, Pennsylvania. (Docket Nos. 48, ¶ 1; 56, ¶ 1). First American timely removed the Complaint to this Court. (Civil Action No. 20-321, Docket No. 1-1). The Complaint concerns a title insurance policy (the "Policy") that was issued to Drnovsek by First American in December 2017, for a property that she purchased in Allegheny County (the "Property"). (Civil Action No. 20-321, Docket No. 1-1, ¶¶ 9, 11; Civil Action No. 20-318, Docket No. 24, ¶¶ 9, 11). The Policy insured Drnovsek for defined "Covered Risks," including certain defects in title, liens or encumbrances on title, or unmarketable title. (Docket Nos. 48, ¶ 13; 56, ¶ 13; Civil Action No. 20-321, Docket No. 1-1, ¶ 10). The Complaint alleges that the Property was unmarketable at the time of purchase due to a lawsuit that had been filed in 2013 by a neighbor, Susan Tusick, in the Court of Common Pleas of Allegheny County, Pennsylvania (the "2013 Tusick Complaint") against multiple parties, including C. Jane Ciocca ("Ciocca"), Drnovsek's predecessor in title for the Property. (Civil Action No. 20-321, Docket No. 1-1, ¶¶ 11-18).

The Tusick Complaint alleges that Ciocca and other homeowners breached a private Road Maintenance Agreement, which was allegedly entered into on or about September 14, 1994 (the "1994 Road Agreement"), to share the cost of maintenance and repair of a private road that provides access to the Property and a number of other homes. (Docket Nos. 48, ¶¶ 8, 15; 56,

¶¶ 8, 15).  The parties agree that the 1994 Road Agreement was never recorded.  (Docket Nos. 48, ¶ 31; 56, ¶ 31).  Furthermore, no *lis pendens* was ever filed identifying the 2013 Tusick Complaint in order to link that case to Allegheny County property records.[1]  (Docket Nos. 48, ¶ 21; 56, ¶ 21).  No dispositive ruling has ever been entered in the Tusick litigation.  (Docket Nos. 48, ¶ 22; 56, ¶ 22).  There has also been no substantive activity in the 2013 Tusick litigation since 2014, other than a notice of proposed termination and notice of intention to proceed in 2018, and the discontinuance as to one of the defendants in 2020.  (Docket Nos. 48, ¶ 23; 56, ¶ 23).  Additionally, the Tusick Complaint was never served on Ciocca (Drnovsek's predecessor in title for the Property), and Ciocca has since passed away.  (Docket Nos. 48, ¶ 24; 56, ¶ 24).

As stated, *supra*, Plaintiff filed the Complaint in this case in the Court of Common Pleas of Allegheny County, Pennsylvania, on February 18, 2020.  (Civil Action No. 20-321, Docket No. 1-1).  On March 5, 2020, First American removed the action to this Court pursuant to the Court's diversity jurisdiction.  (Civil Action No. 20-321, Docket No. 1).  On April 29, 2020, the Honorable Arthur J. Schwab issued an Order consolidating (at Civil Action No. 20-318) this case with two other cases, all of which allege similar Counts against First American based on a similar title insurance policy, the 2013 Tusick Complaint, and the 1994 Road Agreement.  (Docket No. 12).  On September 22, 2020, the consolidated cases were reassigned to this judicial officer.  (Docket No. 37).  On March 30, 2021, the Court approved the Stipulation of Dismissal with prejudice of one of the three consolidated cases.  (Docket No. 47).

At this juncture, Drnovsek's Complaint contains two remaining claims against First American under Pennsylvania law:  Count I – Breach of Contract; and Count III – Breach of

---

[1] "Because a *lis pendens* is only applicable if the title of the property at issue can be affected by the pending action, Pennsylvania courts generally only allow a *lis pendens* to stand when specific performance relating to the title of the property in question is an available remedy." *Ross v. Canada Life Assurance Co.*, No. 94-5557, 1995 WL 745041, at *2 (E.D. Pa. Dec. 15, 1995).

Implied Warranty.² (Civil Action No. 20-321, Docket No. 1-1 at 7-9, 10-11). Drnovsek seeks the following relief: damages associated with the Property's title being unmarketable; anticipated costs and attorney fees associated with defending against the 2013 Tusick litigation; losses associated with the decrease in the Property's value "at a time when the general real estate market has seen a substantial increase in market value;" and "[a]ny and all losses which may yet be determined." (*Id.*). The parties have completed discovery. (Docket Nos. 48, ¶ 11; 56, ¶ 11). As explained, *supra*, First American filed its Motion for Summary Judgment against Drnovsek, which has been fully briefed by the parties, and the motion is now ripe for decision.³

## II.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir.

---

² The complaints in each of the consolidated cases originally contained three Counts, but by stipulation filed May 14, 2020, Plaintiffs agreed to the dismissal with prejudice of their original claims of negligence at Count II of each complaint. (Docket No. 14).

³ First American has also moved for summary judgment against the other remaining Plaintiff in this consolidated action, Snug & Monk Properties, Inc. (Docket No. 50). The parties have briefed that motion separately, and the Court is issuing a separate Memorandum Opinion and Order as to that motion.

1998) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. at 324.

**III.    Discussion**

As previously indicated, Drnovsek's Complaint contains claims against First American under Pennsylvania law for breach of contract (Count I) and breach of implied warranty (Count III). (Civil Action No. 20-321, Docket No. 1-1 at 7-9, 10-11). In Count I, Drnovsek alleges, in essence, that First American engaged in breach of contract by failing to compensate her for damages associated with the deficiency and unmarketability of the title of the Property at the time of sale due to the existence of the Tusick Complaint, including by failing later to defend her against the (anticipated) Tusick lawsuit. (*Id.* ¶¶ 22-32). In Count III, Drnovsek alleges, in

5

essence, that she relied on First American's expertise and assurance that the title to the Property was marketable with no encumbrances, but that, at closing, title to the Property was not marketable since the Tusick lawsuit threatened the status of the Property's title. (*Id.* ¶¶ 39-46). In moving for summary judgment as to Count I, breach of contract, First American makes several arguments, including that Drnovsek does not have Article III standing because she has not shown any injury due to the Tusick lawsuit. First American also argues that, even if Drnovsek would have standing to pursue her claims at this time, there is no encumbrance on the Property's title to make it less marketable, so there is no breach of contract under the Policy. Separately, First American also argues that it is entitled to summary judgment as to Count III because Drnovsek has not proffered any evidentiary support for her claim of breach of implied warranty, despite an earlier order from Judge Schwab warning her that such support would be required. In response to First American's summary judgment motion, Drnovsek argues – more specifically than in her Complaint – that the Tusick Complaint "coupled with" the Road Agreement (which "runs with the land") presents a clear encumbrance upon title to the Property and renders it unmarketable. (Docket No. 57 at 12). The Court will address each of these arguments in turn.

### A. Lack of Standing

Initially, First American argues that it is entitled to summary judgment as to both remaining Counts of the Complaint because Drnovsek has not shown that she has suffered actual injury or that injury is imminent because of the Tusick lawsuit, so she does not have standing to bring claims against First American for breach of contract or breach of implied warranty. To have Article III standing to bring suit in federal court, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and

(3) a likelihood that the injury will be redressed by a favorable decision." *Neale v. Volvo Cars of N. America, LLC*, 794 F.3d 353, 358-59 (3d Cir. 2015) (internal quotation marks and citations omitted); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  First American contends that it is undisputed that no actual injury exists here due to the Tusick litigation because Drnovsek herself is not a party to that case, because she has not expended funds defending against that case, and because she has no basis to assert any diminution in the Property's value since she has not marketed the Property.

In response, Drnovsek remarks generally that "[i]n determining whether an injury exists, it is important to note that it need not be tangible."  (Docket No. 57 at 5 (citing *Spokeo*, 578 U.S. at 340 ("intangible injuries can nevertheless be concrete")).  Drnovsek argues that her title is encumbered at the present moment, and that she cannot sell the Property without disclosing to the purchaser that there is an "active lawsuit" asserted against her predecessor in interest, or (she asserts) she would expose herself to additional liability.  (*Id.* (emphasis in original)).  Therefore, Drnovsek contends, in order to obtain the title that she bargained for and insured with First American, she must defend against the Tusick lawsuit or cure the defects alleged in the Tusick Complaint related to the Road Agreement (*i.e.,* presumably, pay for road repairs).  Drnovsek asserts that the allegations of damage in the Tusick Complaint and their connection with the Property are sufficient to prove injury here, and that the Court may properly redress this injury by requiring First American to assume her defense against the Tusick lawsuit or provide her with compensation for the amount necessary to cure the allegations made (or settle) the Tusick lawsuit.

In its reply, First American summarizes its view of how Drnovsek's arguments as to her injury are pure conjecture, and how her arguments require that a number of unsupported assumptions first be made, including that:

1. Even though Drnovsek's predecessor in title has not been served in the Tusick litigation – and cannot be served because she has passed away – an "active litigation" exists against Drnovsek's predecessor in title.

2. Although Drnovsek is not a named party in the Tusick Complaint, she has a responsibility to either defend against or settle that litigation because of the nature of the Road Agreement.

3. Litigation alleging the breach of the Road Agreement, an unrecorded agreement against a third party, affects the title to the Property simply because that agreement states that it "shall be a covenant running with the land."

4. Even though Drnovsek has not marketed the Property, she potentially will incur damages if and when she markets the Property.

5. Although First American's liability is limited to diminution in value of the title under the terms of the Policy, the term "value" is ambiguous, and the potential damages incurred if Drnovsek markets the Property could be considered a diminution of "value" under the Policy.[4]

(*See* Docket No. 59 at 8-9).

The Court agrees with First American that the arguments proffered by Drnovsek to support her contentions of injury require significant assumptions unsupported by evidence of record, but the Court is mindful that the issue of whether Drnovsek has standing to assert her

---

[4] The Court notes that the parties engage in some debate in their briefs about the value of the Property, and whether the term "value" is clearly defined in the Policy, but the Court need not delve into the details of that dispute (or various other issues that the parties have raised) in ruling on First American's summary judgment motion.

claims is ultimately intertwined with the nature and viability of those claims. Thus, if there are genuine issues of material fact as to whether the Tusick litigation "coupled with" the Road Agreement constitutes an encumbrance on the Property and makes it unmarketable under the Policy, then Drnovsek may also have made a sufficient showing that she suffered an injury to establish standing for such claims. Therefore, for purposes of considering First American's summary judgment motion, the Court will assume that Drnovsek can establish standing, and the Court will examine whether there are genuine issues of material fact as to whether the Tusick litigation ("coupled with" the Road Agreement) encumbers the Property's title and makes it unmarketable, as Drnovsek contends.

### B. Whether There Is an Encumbrance on the Property's Title Making It Unmarketable

First American argues that the 2013 Tusick Complaint (in conjunction with the 1994 Road Agreement upon which that lawsuit is based) is not an encumbrance on the title to the Property that makes it unmarketable, so there is no breach of contract claim for Drnovsek to pursue based on the Policy.

#### 1. The 2013 Tusick Complaint

In moving for summary judgment, First American argues that the 2013 Tusick Complaint is not an encumbrance on the Property's title for three reasons: (1) Ciocca, Drnovsek's predecessor in title to the Property, was never served with the Complaint, and has since passed away and cannot be served; (2) no *lis pendens* has been filed and no judgment has been issued in the case; and (3) the Tusick Complaint is a personal demand for money, not litigation that affects the Property's title.

First, it is undisputed that the Tusick Complaint itself was never served on Ciocca (Drnovsek's predecessor in title), Ciocca cannot be made a party to that litigation because she

has passed away, and Drnovsek herself is not a named party to the Tusick litigation. Thus, the Tusick Complaint does not currently constitute active litigation against Drnovsek, or her predecessor in title, personally. However, Drnovsek now specifically argues that the Tusick litigation involves the Road Agreement that "runs with the land," so such personal service is not dispositive here. This issue of whether the Road Agreement runs with the land, which appears to be at the heart of the parties' dispute here, is discussed in detail in the Court's analysis of the Road Agreement itself, *see* Section III.B.2, *infra*.

Second, First American notes that, since no *lis pendens* was filed in the Tusick litigation, without a *lis pendens* or a judgment in the case, the Tusick Complaint itself did not appear in the "public records" that First American was obligated to search for title insurance purposes. *See, e.g., Rood v. Commw. Land Title Ins. Co.*, 936 A.2d 488 (Pa. Super. Ct. 2007) ("[T]he duty of the title insurance company to search is restricted to those 'public records' which affect the title to the property, as that term has traditionally been understood to encompass, for example, the office of the recorder of deeds and the office of the prothonotary for judgments and liens."). Although Drnovsek argues that First American's search of "public records" should have included "'the office of the recorder of deeds *and the office of the prothonotary* for judgments and liens,'" First American points out that such a search does not bring up any results because there *is* no judgment or lien in the Tusick litigation.[5] (Docket No. 57 at 9 (quoting *Rood*, 936 A.2d at 496 (emphasis added))). Regardless of the parties' dispute as to this issue, Drnovsek eventually concedes, in response to First American's argument, that "the Tusick Complaint affects title to the Property by way of the [Road Agreement's] running with the land, not the presence of a *lis*

---

[5] Notably, a search with the "office of the prothonotary for judgments and liens" is different from a search in "the office of the prothonotary" for active cases in the Allegheny County Court System.

*pendens*." (*Id.* at 11). Once again, the issue of whether the Road Agreement runs with the land is discussed, *infra*, *see* Section III.B.2

Third, First American argues that the Tusick Complaint is a personal demand on Ciocca and others for money, rather than a lawsuit that constitutes an encumbrance on the Property's title that affects its marketability. In response to First American's contention, Drnovsek cites to *Martin v. Banco Popular de Puerto Rico*, 379 F. App'x 185, 189 (3d Cir. 2010), to argue generally that "marketable" title implies that "the title is 'reasonably free from the threat of future litigation.'" (Docket No. 57 at 8). However, *Martin* provides more fully as follows:

> Marketable title is title that can be held or possessed in peace and quiet, and that is reasonably free from the threat of future litigation. There must be no outstanding interest that might endanger the holder's right to **continued possession** of the property. **Title is not marketable if there is a reasonable fear that another entity**, such as an estate, **retains the right to use or transfer the property**.

379 F. App'x at 189 (internal citations and quotation marks omitted) (emphasis added); *see also La Course v. Kiesel*, 77 A.2d 877 (Pa. 1951) (discussing marketability of title where **restrictions against use** of the property for apartments were involved).

Here, Drnovsek does not contend that the Tusick litigation itself affects her right to possess or use the Property. Instead, she argues that, in order to obtain title that is clear from the encumbrance that is the Tusick Complaint "coupled with" the Road Agreement (and to be able to sell or mortgage the Property), she may be forced to defend against or settle that breach of contract case against her predecessor in title. (Docket No. 57 at 12). More specifically, Drnovsek argues that she might need to defend against or settle the Tusick litigation at some point in time because the Road Agreement (upon which the Tusick Complaint is based) affects the Property's title since it "runs with the land."

11

## 2. **The 1994 Road Agreement**

Thus, in responding to First American's summary judgment motion, after some hedging, Drnovsek ultimately argues that the Road Agreement at issue in the Tusick Complaint "runs with the land" as a restrictive covenant. (Docket No. 57 at 11-12). It appears, therefore, that Drnovsek is essentially arguing that the Road Agreement, since it runs with the land, is an encumbrance on the Property, and that, although the Road Agreement is not recorded, the Tusick Complaint should have served as an alert to First American of the existence of the Road Agreement. In other words – as the Court can best discern Drnovsek's argument here – the Road Agreement is an encumbrance on the Property's title that should have been found by First American because of the Tusick lawsuit, and First American is liable to Drnovsek under the Policy for losses incurred due to the existence of the Road Agreement.

Specifically, the Road Agreement provides, "If the private road requires any repair or maintenance due to normal wear and tear, the parties hereto agree to share the cost of said maintenance and repair on the private road." (Docket No. 56-2 at 2). The Road Agreement also states that the "agreement shall be a covenant running with the land, and . . . shall be binding upon any subsequent owners of the property." (*Id.*). Drnovsek concludes that the parties intended the Road Agreement to run with the land because the language is clear, and since the "test in determining whether a particular covenant runs with the land is the intention of the parties." *De Sanno v. Earle*, 117 A. 200, 202 (Pa. 1922).

However, Pennsylvania statutory law also provides:

> All agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property . . . shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate.

12

21 Pa. Stat. & Cons. Ann. § 356.  The statute provides further that the "legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers" and others.  *Id.* § 357.  Thus, a property owner does not need to expressly assume a *properly recorded* covenant that runs with the land, since the recording gives him constructive notice of the covenant.  *See Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 245 (E.D. Pa. 2011).  Nevertheless, a "property owner has the duty to become aware of recorded restrictions in the chain of title and will be bound to such restrictions even absent actual notice." *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 880 (Pa. 2004).  Importantly, however, a property owner must have actual or constructive notice of an encumbrance on property in order for an encumbrance to be enforced against him.  *See Franklin Mills Assocs.*, 836 F. Supp. 2d at 245 (citing *Walsh v. E. Pikeland Twp.*, 829 A.2d 1219, 1223 (Pa. Commw. Ct. 2003)); *In re Oxford Royal Mushroom Prods., Inc. v. Kelton Realty, Inc.*, 39 B.R. 948, 950 (Bankr. E.D. Pa. 1984) (explaining that *Finley v. Glenn*, 154 A. 299 (Pa. 1931), "implicitly holds that actual or constructive notice is necessary to bind a party to covenants which run with the land," so the covenant at issue had to be recorded in order for it to bind the trustee).

Here, Drnovsek admits that the Road Agreement was not recorded, so she cannot argue that she was, through recording, given constructive notice of the agreement, and that it is therefore enforceable against her as an encumbrance on the Property, nor does she claim to have had actual notice of the agreement.  (Docket Nos. 48, ¶ 31; 56, ¶ 31).  Since Drnovsek admittedly had neither actual nor constructive notice of the Road Agreement – and since her statements are properly taken as true for purposes of summary judgment – then the never-recorded Road Agreement would not be enforceable against her as an encumbrance on the Property's title under Pennsylvania law.  Accordingly, the Tusick Complaint alleging breach of contract based on a

violation of the Road Agreement by Drnovsek's predecessor in title also does not constitute an encumbrance on the Property's title and make it unmarketable.  *See, e.g., Barter v. Palmerton Area Sch. Dist.*, 581 A.2d 652, 654 (Pa. Super. Ct. 1990) (explaining that marketable title is "free from liens and encumbrances," and "where there is no color of outstanding title which might prove substantial, and there is no reasonable doubt either at law or in fact concerning the title, the mere possibility of some future litigation concerning it does not prevent the title from being good and marketable").

Therefore, the Court concludes that First American has shown that there is no genuine issue of material fact regarding there being no encumbrance on the Property's title, making it unmarketable under the Policy, which is needed to establish Drnovsek's claim for breach of contract.  Drnovsek has failed to rebut First American's showing with the argument that she has offered in response, that it is the Road Agreement "coupled with" the Tusick Complaint that constitutes an encumbrance on the title to the Property and makes it unmarketable.  Thus, the Court further concludes that Drnovsek, in responding to First American's motion, has failed to meet her burden to show, based on the evidence of record, that there is a disputed issue of material fact as to the existence of an encumbrance on the Property's title making it unmarketable under the Policy.  Accordingly, the Court finds that First American is entitled to summary judgment as to Drnovsek's breach of contract claim in Count I of the Complaint.

### C. Whether There Is Support for the Claim of Breach of Implied Warranty

A breach of implied warranty claim will generally be precluded by an integration clause per the parole evidence rule, although there are exceptions to this general rule including where a term was omitted due to fraud, mistake, accident, or where a term is ambiguous.  *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004).  As First American explains,

earlier in this case when denying First American's Motion to Dismiss Drnovsek's claim of breach of implied warranty, Judge Schwab remarked that he would allow such (alternate) claim to continue through the discovery period. (Docket No. 21 at 4). Judge Schwab cautioned Drnovsek, however, that in the event that no evidence of fraud/mistake/accident/ambiguity was uncovered during discovery, the Court would consider at the summary judgment stage First American's argument that the parole evidence rule and the integration clause in the Policy preclude any claim outside of the Policy. (*See id.*). First American argues that, since discovery has now ended and Drnovsek has failed to submit any evidence of fraud, mistake, accident, or ambiguity, First American is entitled to summary judgment on Drnovsek's claim for breach of implied warranty in accordance with Judge Schwab's earlier Order.

Upon consideration of the parties' arguments, the Court agrees. Although Drnovsek states that there is ambiguity here because the parties disagree as to what constitutes a "covered risk" under the policy, she has not specified what terms are ambiguous, nor has she provided any alternative definitions at issue, beyond stating that the parties disagree as to whether or not there is coverage here. "A contract is not rendered ambiguous," however, "merely because the parties disagree upon its construction." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. Ct. 2000). Thus, the parties' disagreement as to the extent of coverage does not show evidence of ambiguity. Moreover, since the Policy defines exclusions from coverage and states that the Policy, together with endorsements (if any) attached to it by the Company, is "the entire policy and contract between the Insured and the Company," and since – despite her contention that ambiguity exists here – Drnovsek has provided no evidence of any such ambiguity, the Court finds that Drnovsek is precluded from recovering on a breach of implied warranty claim. (Docket No. 57-1 at 3, 6, ¶ 15(a)).

The Court therefore finds that First American is entitled to summary judgment on Drnovsek's claim of breach of implied warranty in accordance with Judge Schwab's prior Order (Docket No. 21) as Drnovsek has failed to submit any evidence of fraud, mistake, accident, or ambiguity to support such claim.

### IV.   Conclusion

Based on the foregoing, First American's Motion for Summary Judgment (Docket No. 48) is granted.  Accordingly, summary judgment is granted in favor of First American as to Counts I and III of Drnovsek's Complaint.

An Order consistent with this Memorandum Opinion follows.


Dated: July 6, 2023                                              *s/ W. Scott Hardy*
                                                                 W. Scott Hardy
                                                                 United States District Judge

cc/ecf:  All counsel of record