IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SNUG & MONK PROPERTIES, INC., A Pennsylvania Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) Civil Action No. 20-318 |
| VALERIE DRNOVSEK, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is the Motion for Summary Judgment Against Plaintiff Snug & Monk and brief in support filed by Defendant First American Title Insurance Company ("First American") in this matter (Docket Nos. 50, 51), the response and brief in opposition filed by Plaintiff Snug & Monk Properties, Inc. ("Snug & Monk") (Docket Nos. 54, 55), and First American's reply (Docket No. 60). In considering the motion and briefs, the Court has also considered the parties' concise statements and counter statements of material facts that are included within the motion and response thereto, as well as the exhibits that were filed in connection with the parties' briefing.

For the reasons set forth herein, First American's Motion for Summary Judgment is granted.

I. **Factual Background**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to First American's summary judgment motion. On January 31, 2020, Snug & Monk filed a Complaint against First American in the Court of Common Pleas of Allegheny County, Pennsylvania. (Docket Nos. 50, ¶ 1; 54, ¶ 1). First American timely removed the Complaint to this Court. (Civil Action No. 20-320, Docket No. 1). The Complaint concerns a title insurance policy (the "Policy") that was issued to Snug & Monk by First American in September 2018 for a property (the "Property") that Snug & Monk purchased in Allegheny County from seller Vernon L. Gay ("Vernon Gay"). (Civil Action No. 20-320, Docket No. 1-2, ¶¶ 9, 11; Civil Action No. 20-318, Docket No. 22, ¶¶ 9, 11). The Policy insures Snug & Monk for "Covered Risks," including certain defects in title, liens or encumbrances on the title, or unmarketable title. (Docket Nos. 50, ¶¶ 11, 14; 54, ¶¶ 11, 14). The Complaint alleges that the Property was unmarketable at the time of purchase due to a lawsuit that had been filed in 2013 by a neighbor, Susan Tusick, in the Court of Common Pleas of Allegheny County, Pennsylvania (the "2013 Tusick Complaint") against multiple parties, including Vernon Gay, Snug & Monk's predecessor in title for the Property. (Civil Action No. 20-320, Docket No. 1-2, ¶¶ 11, 12).

The Tusick Complaint alleges that Vernon Gay and other homeowners breached a private Road Maintenance Agreement, which was allegedly entered into on or about September 14, 1994 (the "Road Agreement"), to share the cost of maintenance and repair of a private road that provides access to the Property and a number of other homes. (Docket Nos. 50, ¶¶ 6, 13; 54,

¶¶ 6, 13).  Although Vernon Gay and his wife, Sonya Gay, jointly owned the Property at the time of the Road Agreement, Sonya Gay never signed that agreement.  (Docket Nos. 50, ¶¶ 32, 33; 54, ¶¶ 32, 33).  The parties also do not appear to dispute the fact that the Road Agreement was never recorded.  (Docket No. 51 at 8).  Furthermore, no *lis pendens* was ever filed identifying the 2013 Tusick Complaint, in order to link that case to Allegheny County property records, and no dispositive ruling has ever been entered in the Tusick litigation.[1]  (Docket Nos. 50, ¶¶ 22, 23; 54, ¶¶ 22, 23).  There has been no substantive activity in the 2013 Tusick litigation since 2014, other than a notice of proposed termination and notice of intention to proceed in 2018.  (Docket Nos. 50, ¶ 27; 54, ¶ 27).  The Tusick Complaint was discontinued as to Vernon Gay on July 24, 2020. (Docket Nos. 50, ¶ 28; 54, ¶ 28).

As stated, *supra*, Snug & Monk filed the Complaint in this case in the Court of Common Pleas of Allegheny County, Pennsylvania, on January 31, 2020.  (Civil Action No. 20-320, Docket No. 1-2).  On March 5, 2020, First American removed the action to this Court pursuant to the Court's diversity jurisdiction.  (Civil Action No. 20-320, Docket No. 1).  On April 29, 2020, the Honorable Arthur J. Schwab issued an Order consolidating (at Civil Action No. 20-318) this case with two other cases, all of which allege similar Counts against First American based on a largely similar title insurance policy, the 2013 Tusick Complaint, and the 1994 Road Agreement.  (Docket No. 12).  On September 22, 2020, the consolidated cases were reassigned to this judicial officer.  (Docket No. 37).  On March 30, 2021, the Court approved the Stipulation of Dismissal with prejudice of one of the three consolidated cases.  (Docket No. 47).

---

[1] "Because a *lis pendens* is only applicable if the title of the property at issue can be affected by the pending action, Pennsylvania courts generally only allow a *lis pendens* to stand when specific performance relating to the title of the property in question is an available remedy." *Ross v. Canada Life Assurance Co.*, No. 94-5557, 1995 WL 745041, at *2 (E.D. Pa. Dec. 15, 1995).

3

At this juncture, Snug & Monk's Complaint contains two remaining claims against First American under Pennsylvania law:  Count I – Breach of Contract; and Count III – Breach of Implied Warranty.[2]  (Civil Action No. 20-320, Docket No. 1-2 at 7-8, 10-11).  Snug & Monk seeks the following relief:  damages associated with an alleged lost sale of the Property and the Property's title being unmarketable; anticipated costs and attorney fees associated with defending against the 2013 Tusick litigation; losses associated with the decrease in the Property's value "at a time when the general real estate market has seen a substantial increase in market value;" and "[a]ny and all losses which may yet be determined." (*Id.*).  The parties have completed discovery.  (Docket Nos. 50, ¶ 9; 54, ¶ 9).  As explained, *supra*, First American filed its Motion for Summary Judgment against Snug & Monk, which has been fully briefed by the parties, and the motion is now ripe for decision.[3]

II.   **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[2] The complaints in each of the consolidated cases originally contained three Counts, but by stipulation filed May 14, 2020, Plaintiffs agreed to the dismissal with prejudice of their original claims of negligence at Count II of each complaint. (Docket No. 14).

[3] First American has also moved for summary judgment against the other remaining Plaintiff in this consolidated action, Valerie Drnovsek. (Docket No. 48). The parties have briefed that motion separately, and the Court is issuing a separate Memorandum Opinion and Order as to that motion.

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. at 324.

### III.   Discussion

As previously indicated, Snug & Monk's Complaint contains claims against First American under Pennsylvania law for breach of contract (Count I) and breach of implied warranty (Count III). (Civil Action No. 20-320, Docket No. 1-2 at 7-8, 10-11). In Count I, Snug & Monk alleges, in essence, that First American engaged in breach of contract by failing to

compensate it for damages associated with the deficiency and unmarketability of the Property's title at the time of sale due to the existence of the Tusick Complaint, including by failing later to defend it against the Tusick lawsuit.  (*Id.* ¶¶ 27-37).  In Count III, Snug & Monk alleges, in essence, that it relied on First American's expertise and assurance that the title to the Property was marketable with no encumbrances, but that, at closing, title to the Property was not marketable since the Tusick lawsuit threatened the status of the Property's title.  (*Id.* ¶¶ 44-51).

In moving for summary judgment as to Count I, breach of contract, First American makes several arguments, including that neither the Tusick Complaint nor the Road Agreement constitutes an encumbrance on the Property's title and makes it less marketable, so there is no breach of contract under the Policy.  Separately, First American also argues that it is entitled to summary judgment as to Count III because Snug & Monk has not proffered any evidentiary support for its claim of breach of implied warranty, despite an earlier order from Judge Schwab warning that such support would be required.  In response to First American's summary judgment motion, Snug & Monk argues – more specifically than alleged in its Complaint – that the Tusick Complaint "coupled with" the Road Agreement (which "runs with the land") presents a clear encumbrance upon title to the Property and renders it unmarketable.  (Docket No. 55 at 11).  The Court will address each of these arguments in turn.

### A. Whether There Is an Encumbrance on the Property's Title Making it Unmarketable

First American argues that the 2013 Tusick Complaint (in conjunction with the 1994 Road Agreement upon which the Tusick lawsuit is based) is not an encumbrance on the Property's title that makes it unmarketable, so there is no breach of contract claim for Snug & Monk to pursue based on the Policy.

1. **The 2013 Tusick Complaint**

In moving for summary judgment, First American argues that the 2013 Tusick Complaint is not an encumbrance on the Property's title for several reasons, including that: (1) the Road Agreement, the breach of which is at issue in the Tusick Complaint, was not signed by both owners of the Property at the time of the Agreement; (2) no *lis pendens* has been filed and no judgment has been issued in the Tusick lawsuit, so the Tusick Complaint is not a part of the "Public Records" for purposes of the Policy; and (3) the Tusick Complaint is a personal demand for money, not litigation that affects the Property's title.

First, it is undisputed that, since Sonya Gay did not sign the 1994 Road Agreement, that agreement was not initially signed by both owners of the Property. First American argues that since the Tusick Complaint is based on a breach of the Road Agreement which was not agreed to by both owners of the Property, it does not constitute an encumbrance on the Property. In response, Snug & Monk contends that Sonya Gay's failure to sign the Road Agreement is not fatal to Snug & Monk's claim here because of the well-settled legal principle that conduct may manifest consent to an agreement. *See Selig v. Phila. Title Ins. Co.*, 111 A.2d 147, 151 (Pa. 1955). While First American agrees with the soundness of that legal principle, it notes that Snug & Monk does not cite to any conduct of Sonya Gay manifesting her consent to the Road Agreement. However, based on Sonya Gay's subsequent transferal of her interest in the Property to Vernon Gay, Snug & Monk states that "any interest or obligation under the [Road Agreement] became solely vested in Vernon Gay following Sonya Gay's deed on June 10, 1998," and therefore Vernon Gay's signature on the Road Agreement was sufficient.[4] (Docket Nos. 51 at 5 n.2; 54, ¶ 34). First American argues in response that no obligation "running with the land"

---

[4] Sonya Gay transferred her interest in the Property to Vernon Gay on June 10, 1998. (Docket No. 51 at 5 n.2).

7

existed under the Road Agreement in the first place because Sonya Gay did not sign it four years earlier, so there was no obligation to pass on later to Vernon Gay. Regardless of the parties' dispute regarding this issue, however, and assuming, for purposes of summary judgment, that Sonya Gay's passing of her interest to her husband is sufficient for any obligations under the Road Agreement to apply to him personally, the pertinent question then becomes whether the Road Agreement also "runs with the land" as Snug & Monk contends. This issue of whether the Road Agreement runs with the land, which appears to be at the heart of the parties' dispute here, is discussed in greater detail in the Court's analysis of the Road Agreement itself, *see* Section III.A.2, *infra*.

Second, First American notes that, since no *lis pendens* was filed in the Tusick litigation, and because there is also no judgment in the case, the Tusick Complaint itself did not appear in the search of "Public Records" that First American was obligated to undertake for title insurance purposes.[5] *See, e.g., Rood v. Commw. Land Title Ins. Co.*, 936 A.2d 488 (Pa. Super. Ct. 2007) ("[T]he duty of the title insurance company to search is restricted to those 'public records' which affect the title to the property, as that term has traditionally been understood to encompass, for example, the office of the recorder of deeds and the office of the prothonotary for judgments and liens."). Although Snug & Monk argues that First American's search of "public records" should have included "'the office of the recorder of deeds *and the office of the prothonotary* for judgments and liens,'" First American points out that such a search does not bring up any results because there *is* no judgment or lien in the Tusick litigation.[6] (Docket No. 55 at 8 (quoting

---

[5]   The term "Public Records" is defined in the Policy as "Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge." (Docket No. 51-2 at 4).

[6]   Notably, a search with the "office of the prothonotary for judgments and liens" is different from a search in "the office of the prothonotary" for active cases in the Allegheny County Court System.

8

*Rood*, 936 A.2d at 496 (emphasis added))). Additionally, Snug & Monk asserts, without citation to any supporting authority, that First American should have performed "a search of the seller's name to ensure that no litigation was currently pending against him." (*Id.*). However, as First American remarks, filing a suit for breach of contract against a predecessor in title does not make such action part of a "public record" that affects title to the Property, in the absence of a judgment or *lis pendens*, or there would be a "cloud on the title to [every Defendant's] real estate whenever a breach of contract suit arises." *In re Foremost Inds., Inc. v. GLD Foremost Holdings, LLC,* 156 A.3d 318, 324 (2017). Regardless of the parties' dispute as to this issue, Snug & Monk eventually concedes, in response to First American's argument, that "the Tusick Complaint affects title to the Property by way of the [Road Agreement's] *running with the land*, not the presence of a *lis pendens*." (Docket No. 55 at 9 (emphasis added)). Once again, the issue of the Road Agreement running with the land is discussed, *infra*, *see* Section III.A.2

In the same vein, First American's third argument is that the Tusick Complaint is a personal demand on Vernon Gay (among others) for money, rather than a lawsuit that constitutes an encumbrance on the Property's title that, as a result, affects its marketability. In response to First American's contention, Snug & Monk cites to *Martin v. Banco Popular de Puerto Rico*, 379 F. App'x 185, 189 (3d Cir. 2010), to argue generally that "marketable" title implies that "the title is 'reasonably free from the threat of future litigation.'" (Docket No. 55 at 6). However, *Martin* provides more fully as follows:

> Marketable title is title that can be held or possessed in peace and quiet, and that is reasonably free from the threat of future litigation. There must be no outstanding interest that might endanger the holder's right to **continued possession** of the property. **Title is not marketable if there is a reasonable fear that another entity**, such as an estate, **retains the right to use or transfer the property**.

9

379 F. App'x at 189 (internal citations and quotation marks omitted) (emphasis added); *see also La Course v. Kiesel*, 77 A.2d 877 (Pa. 1951) (discussing marketability of title where **restrictions against use** of the property for apartments were involved).

Here, Snug & Monk does not contend that the Tusick litigation itself affects its right to possess or use the Property. Instead, Snug & Monk argues that "[a]t a minimum, such threat of litigation against the Property's title would force Snug & Monk to enter its appearance and defend," and "[a]t worst, the litigation would require Snug & Monk to offer a settlement or face an uncertain outcome at trial."[7] (Docket No. 55 at 7). Thus, in the end, Snug & Monk explains that it might need to defend against or settle the Tusick litigation at some point in time because the Road Agreement upon which the Tusick Complaint is based affects the title to the property since it "runs with the land." (Docket No. 55 at 9).

### 2. The 1994 Road Agreement

Thus, in opposing First American's summary judgment motion, Snug & Monk ultimately relies on its argument that the Road Agreement at issue in the Tusick Complaint "runs with the land" as a restrictive covenant. (Docket No. 55 at 10-11). It appears, therefore, that Snug & Monk is essentially arguing that the Road Agreement, since it runs with the land, is an encumbrance on the Property, and that, although the Road Agreement is not recorded, the Tusick Complaint should have served as an alert to First American as to the existence of the Road Agreement. In other words – as the Court can best discern Snug & Monk's argument here – the Road Agreement is an encumbrance on the Property's title that should have been found by First American because of the Tusick lawsuit, and First American is liable to Snug & Monk under the

---

[7] The Court notes that the parties engage in some debate in their briefs about the value of the Property, and whether the term "value" is clearly defined in the Policy, but the Court need not delve into the details of that dispute (or various other issues that the parties have raised) in ruling on First American's summary judgment motion.

Policy for losses incurred due to the existence of the Road Agreement (which is the subject of the Tusick Complaint).

Specifically, the Road Agreement provides, "If the private road requires any repair or maintenance due to normal wear and tear, the parties hereto agree to share the cost of said maintenance and repair on the private road." (Docket No. 50-6 at 2). The Road Agreement also states that the "agreement shall be a covenant running with the land, and . . . shall be binding upon any subsequent owners of the property." (*Id.*). Snug & Monk concludes that the parties intended the Road Agreement to run with the land because the language is clear, and since the "test in determining whether a particular covenant runs with the land is the intention of the parties." *De Sanno v. Earle*, 117 A. 200, 202 (Pa. 1922).

However, Pennsylvania statutory law also provides:

> All agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property . . . shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate.

21 Pa. Stat. & Cons. Stat. Ann. § 356. The statute provides further that the "legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers" and others. *Id.* § 357. Thus, a property owner does not need to expressly assume a *properly recorded* covenant that runs with the land, since the recording gives him constructive notice of the covenant. *See Franklin Mills Assocs., L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 245 (E.D. Pa. 2011). Nevertheless, a "property owner has the duty to become aware of recorded restrictions in the chain of title and will be bound to such restrictions even absent actual notice." *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 880 (Pa. 2004). However, a property owner must have actual or constructive notice of an encumbrance on property in order

for an encumbrance to be enforced against him. *See Franklin Mills Assocs.*, 836 F. Supp. 2d at 245 (citing *Walsh v. E. Pikeland Twp.*, 829 A.2d 1219, 1223 (Pa. Commw. Ct. 2003)); *In re Oxford Royal Mushroom Prods., Inc. v. Kelton Realty, Inc.*, 39 B.R. 948, 950 (Bankr. E.D. Pa. 1984) (explaining that *Finley v. Glenn*, 154 A. 299 (Pa. 1931), "implicitly holds that actual or constructive notice is necessary to bind a party to covenants which run with the land," so the covenant at issue had to be recorded to bind the trustee).

Here, there appears to be no dispute that the Road Agreement was not recorded, so Snug & Monk cannot argue that it was, through recording, given constructive notice of the Road Agreement under Pennsylvania statutory law, and that it is therefore enforceable against it as an encumbrance on the Property. Snug & Monk also denies having had actual notice of the Road Agreement (although it admits that its principal was emailed a copy of the Tusick Complaint before Snug & Monk closed on the Property). (Docket Nos. 50, ¶¶ 35-37; 54, ¶¶ 35-37). If, as Snug & Monk represents, it had neither actual nor constructive notice of the Road Agreement – and since its statements are properly taken as true for purposes of summary judgment – then the never-recorded Road Agreement would not be enforceable against it as an encumbrance on the Property's title under Pennsylvania law. Accordingly, the Tusick Complaint, which alleges breach of contract based on a violation of the Road Agreement by Snug & Monk's predecessor in title, also does not constitute an encumbrance on the Property's title and make it unmarketable. *See, e.g., Barter v. Palmerton Area Sch. Dist.*, 581 A.2d 652, 654 (Pa. Super. Ct. 1990) (explaining that marketable title is "free from liens and encumbrances," and "where there is no color of outstanding title which might prove substantial, and there is no reasonable doubt either at law or in fact concerning the title, the mere possibility of some future litigation concerning it does not prevent the title from being good and marketable").

Therefore, the Court concludes that First American has shown that there is no genuine issue of material fact regarding there being no encumbrance on the Property's title, making it unmarketable under the Policy, which is needed to establish Snug & Monk's claim for breach of contract. Snug & Monk has failed to rebut First American's showing with the argument that they have offered in response, that it is the Road Agreement "coupled with" the Tusick Complaint that constitutes an encumbrance on the title to the Property and makes it unmarketable. Thus, the Court further concludes that Snug & Monk, in responding to First American's motion, has failed to meet its burden to show, based on the evidence of record, that there is a disputed issue of material fact as to the existence of an encumbrance on the Property's title making it unmarketable under the Policy. Accordingly, the Court finds that First American is entitled to summary judgment as to Snug & Monk's breach of contract claim in Count I of the Complaint.

### B. Whether There Is Support for the Claim of Breach of Implied Warranty

A breach of implied warranty claim will generally be precluded by an integration clause per the parole evidence rule, although there are exceptions to this general rule including where a term was omitted due to fraud, mistake, accident, or where a term is ambiguous. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004). As First American explains, earlier in this case when denying First American's Motion to Dismiss Snug & Monk's claim of breach of implied warranty, Judge Schwab remarked that he would allow such (alternate) claim to continue through the discovery period. (Docket No. 21 at 4). Judge Schwab cautioned Snug & Monk, however, that in the event that no evidence of fraud/mistake/accident/ambiguity was uncovered during discovery, the Court would consider at the summary judgment stage First American's argument that the parole evidence rule and the integration clause in the Policy

preclude any claim outside of the Policy. (*See id.*). First American argues that, since discovery has now ended and Snug & Monk has failed to submit any evidence of fraud, mistake, accident, or ambiguity, First American is entitled to summary judgment on Snug & Monk's claim for breach of implied warranty in accordance with Judge Schwab's earlier Order.

Upon consideration of the parties' arguments, the Court agrees. Although Snug & Monk states that there is ambiguity here because the parties disagree as to what constitutes a "covered risk" under the policy, it has not specified what terms are ambiguous, nor has it provided any alternative definitions at issue, beyond stating that the parties disagree as to whether or not there is coverage here. "A contract is not rendered ambiguous," however, "merely because the parties disagree upon its construction." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. Ct. 2000). Thus, the parties' disagreement as to the extent of coverage does not show evidence of ambiguity. Moreover, since the Policy defines exclusions from coverage and states that the Policy, together with endorsements (if any) attached to it by the company, is "the entire policy and contract between the Insured and the Company," and since – despite its contention that ambiguity exists here – Snug & Monk has provided no evidence of any such ambiguity, the Court finds that Snug & Monk is precluded from recovering on a breach of implied warranty claim. (Docket No. 55-2 at 3, 6, ¶ 15(a)).

The Court therefore finds that First American is entitled to summary judgment on Snug & Monk's claim of breach of implied warranty in accordance with Judge Schwab's prior Order (Docket No. 21) as Snug & Monk has failed to submit any evidence of fraud, mistake, accident, or ambiguity to support such claim.

**IV.     Conclusion**

Based on the foregoing, First American's Motion for Summary Judgment (Docket No. 50) is granted.  Accordingly, summary judgment is granted in favor of First American as to Counts I and III of Snug & Monk's Complaint.

An Order consistent with this Memorandum Opinion follows.


Dated: July 6, 2023                                                                *s/ W. Scott Hardy*
                                                                                              W. Scott Hardy
                                                                                              United States District Judge

cc/ecf: All counsel of record